MATTER OF GRIJALVA

In Deportation Proceedings

A-38840614

*Decided by Board June 22, 1988*

(1) An alien bears the burden of establishing eligibility for a waiver of deportation pursuant to section 241(f)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f)(2) (1982), and of showing that he warrants a favorable exercise of discretion.

(2) Where the amount of marihuana that an alien has been convicted of possessing cannot be ascertained from the alien's conviction record, the alien must come forward with credible testimony or other evidence to meet his burden of proving that his conviction related to "30 grams or less of marihuana," and thereby satisfy one of the prerequisites for section 241(f)(2) relief.

(3) Hearsay evidence is admissible in deportation proceedings unless its use is fundamentally unfair to an alien.

(4) As provided by the regulations in 8 C.F.R. § 242.14(c) (1988), an immigration judge may receive into evidence any relevant and material statement made by an alien during a previous investigation.

(5) The admission into evidence of police reports concerning the circumstances of an alien's arrest is especially appropriate in cases involving discretionary relief from deportation, where all relevant factors regarding an alien's arrest and conviction should be considered.

CHARGE:
Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of marihuana violation

ON BEHALF OF RESPONDENT:
Severiano A. Roderte, Esquire
111 West Monroe, Suite 718
Phoenix, Arizona 85003

ON BEHALF OF SERVICE:
David Peters
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The respondent has appealed an immigration judge's decision, dated January 22, 1986, in which the immigration judge denied the respondent's request for relief pursuant to section 241(f)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f)(2) (1982), and

ordered that the respondent be deported to Mexico. The appeal will be dismissed.

The respondent is a 38-year-old native and citizen of Mexico. He was admitted into the United States for lawful permanent residence on February 12, 1985. The respondent's spouse is also a Mexican national who is a lawful permanent resident in this country. The respondent and his wife have been married for 6 years. They have a United States citizen daughter and son, whose ages are 5 and 3, respectively. The respondent's wife has a 10-year-old son from a previous marriage who also resides with the respondent and his wife.

On October 1, 1985, the respondent entered a guilty plea in the Superior Court of Maricopa County, Arizona, to the charge of possession of marihuana in violation of sections 13-3401 and 13-3405 of the Arizona Revised Statutes, a class 6 undesignated felony.[1] The respondent was convicted on October 29, 1985, and he was sentenced to 3 years' probation for the offense.[2]

On October 29, 1985, the Immigration and Naturalization Service issued an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) against the respondent, charging that he was deportable pursuant to section 241(a)(11) of the Act as an alien who had been convicted of a violation of a law relating to the possession of marijuana.[3] At his deportation hearing, the respondent admitted that the allegations concerning him in the Order to Show Cause were true, denied the charge of deportability

---

[1] Although neither of the parties has submitted a copy of the statute under which the respondent was convicted, we take administrative notice of section 13-3405 of the Arizona Revised Statutes, which provides in pertinent part:

A. A person shall not knowingly:

1. Possess or use marijuana

. . . .

B. A person who violates:

1. Subsection A, paragraph 1 involving an amount of marijuana not possessed for sale having a weight at the time of seizure of less than one pound is guilty of a class 6 felony

. . . .

[2] The record reflects that the sentencing court recommended that the respondent not be deported. The provision in the Act concerning the judicial recommendation against deportation, however, specifically states that it shall not apply to persons, such as the respondent, who are charged with deportability pursuant to section 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11) (1982). See section 241(b) of the Act.

[3] Section 241(a)(11) of the Act was amended by the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207. It now provides in pertinent part that any alien shall be deported who "has been convicted of a violation of . . . any law . . . of a State . . . relating to a controlled substance (as defined in section 101 of the Controlled Substances Act (21 U.S.C. 802))."

contained in the Order to Show Cause, and submitted an application for relief from deportation pursuant to section 241(f)(2) of the Act.

Section 241(f)(2) of the Act provides:

The provisions of subsection (a)(11) as relate to a single offense of simple possession of 30 grams or less of marihuana may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in subsection (a)(19)) who—

(A) is the spouse or child of a citizen of the United States or of an alien lawfully admitted for permanent residence, or

(B) has a child who is a citizen of the United States or an alien lawfully admitted for permanent residence.

if it is established to the satisfaction of the Attorney General that the alien's deportation would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, or child of such alien and that such waiver would not be contrary to the national welfare, safety, or security of the United States.

This discretionary waiver was added to the Act in 1981 for humanitarian purposes to ameliorate the hardship that an alien's deportation would cause to his United States citizen or lawful permanent resident relatives when the alien had been convicted of one simple possession of marihuana offense. *See* Section 8, Immigration and Nationality Act Amendments of 1981, Pub. L. No. 97-116, 95 Stat. 1161; *see also* H.R. Rep. No. 264, 97th Cong., 1st Sess. 20-21, *reprinted in* 1981 U.S. Code Cong. & Ad. News 2589-90.

Both the respondent and his wife testified in support of the respondent's application for relief from deportation. The respondent also submitted into evidence the transcript from his criminal proceedings in which he had entered a guilty plea to the charge of possession of marihuana. The immigration judge accepted into evidence, over the objection of the respondent, the police reports which described the respondent's arrest and which summarized the evidence that was seized at the respondent's home. At the conclusion of the deportation hearing, the immigration judge, as noted above, found the respondent to be deportable as charged and denied his section 241(f)(2) application.

On appeal, the respondent contends that he admitted in his criminal proceedings only that he had been in possession of a "cigarette and a half" of marihuana, that the immigration judge's finding that the respondent possessed more than 30 grams of marihuana was incorrect, and that he is eligible for a section 241(f)(2) waiver of deportability. The respondent also contends on appeal that the immigration judge erred in admitting into evidence the police reports concerning the respondent, because those reports were outside the record of his criminal proceedings and because he

did not have the opportunity to cross-examine the persons who prepared the reports.

The Service bears the burden of establishing an alien's deportability by means of evidence that is "clear, unequivocal, and convincing." *Woodby* v. *INS*, 385 U.S. 276, 286 (1966); 8 C.F.R. § 242.14(a) (1988). The Service has met that burden in this case because the respondent conceded that all of the allegations concerning him in the Order to Show Cause, including the allegation that he had been convicted of possession of marihuana in violation of Arizona law, were true. We therefore find that the Service has sustained the charge of section 241(a)(11) deportability that it entered against the respondent.[4]

Aliens in deportation proceedings have the burden of proving statutory eligibility for relief from deportation and of showing that they are entitled to a favorable exercise of discretion. *See* 2 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 7.1b(4), at 7-11 (rev. ed. 1987). The respondent here has the burden of showing that he is eligible for section 241(f)(2) relief and that he warrants that relief as a matter of discretion. *See* 8 C.F.R. §§ 242.17(d), (e) (1988); *see also Reid* v. *INS*, 756 F.2d 7, 10 (3d Cir. 1985); *Matter of Connelly*, 19 I&N Dec. 156 at 160 (BIA 1984).

The respondent submitted into evidence the transcript from his criminal proceedings to support his contention that he was convicted of a single offense of possession of less than 30 grams of marihuana. The transcript reflects that the sentencing judge informed the respondent of his rights and then told the respondent that the judge "need[ed] to establish a factual basis to support [the respondent's] guilty plea." The following exchange then took place between the sentencing judge and the respondent (defendant):

THE COURT: So is it true that on or about September 10th of 1985, in Maricopa County you did knowingly possess marijuana, a usable amount, which in fact was marijuana?

THE DEFENDANT: Yes. Yes.

THE COURT: How did you possess it?

THE DEFENDANT: In a bag.

THE COURT: All right. Was it your bag?

THE DEFENDANT: It was in a paper bag.

THE COURT: Was it your paper bag?

---

[4] Much of the confusion in this case has resulted from a failure to specify the parties' respective burdens of proof. The Service does have the burden of proving the alien's deportability. But after it has met that burden, the respondent, as will be discussed *infra*, bears the burden of establishing eligibility for any relief from deportation.

THE DEFENDANT: What? Mine?

THE COURT: Yes. Was it your paper bag?

THE DEFENDANT: It was a paper bag.

THE COURT: The marijuana, was it your marijuana?

THE DEFENDANT: No.

THE COURT: Whose was it?

THE DEFENDANT: It was a friend of mines [sic]. I had it.

THE COURT: It wasn't yours?

THE DEFENDANT: No.

THE COURT: All right.

[DEFENDANT'S COUNSEL]: As I understand it, Your Honor, there was also an amount in his pocket.

THE COURT: Did you have some marijuana in your pocket?

THE DEFENDANT: Yes. I had a little bit in my pocket.

THE COURT: How much was there?

THE DEFENDANT: A little bit.

THE COURT: Was it a usable amount?

THE DEFENDANT: Yes. It was a little bit. It was for a cigarette or two. Cigarette and a half.

THE COURT: All right. Do either counsel have any questions regarding factual basis or voluntariness of the plea?

At the close of the criminal proceedings the judge stated:

> Based on the record the court finds that the defendant has knowingly, inteligently [sic], and voluntarily entered a negotiated guilty plea to possession of marijuana, a class 6 felony, open ended offense. I further find that there is a factual basis to sustain the guilty plea. I will accept the guilty plea.

The respondent maintains that only the transcript from his criminal proceedings and his conviction record should be considered in determining the amount of marihuana that he was convicted of possessing. However, based upon a review of the transcript from the criminal proceedings, it is apparent that the specific amount of marihuana which the respondent possessed was not at issue in his criminal proceedings. The sentencing judge explained to the respondent that the judge wished to question the respondent for the purpose of establishing a "factual basis" for the respondent's guilty plea. The sentencing judge sought only a concession from the respondent that he had in fact possessed marihuana, without regard to the amount he possessed.[5] The respondent's con-

---

[5] Although in the course of the colloquy between the sentencing judge and the respondent, the respondent did state that he had possessed a marihuana "cigarette and a half," there is nothing in the record which establishes that the respondent's conviction related to that exact amount.

viction record, a copy of which is included in the record, states that the respondent "is guilty of the crime of possession of marijuana," but does not specify the amount that the respondent had been found guilty of possessing.[6] The precise amount of marihuana that the respondent was convicted of possessing also cannot be determined from the criminal statute under which he was convicted.[7]

Accordingly, in cases such as the instant case, where the amount of marihuana that an alien has been convicted of possessing cannot be readily determined from the conviction record, the alien who seeks section 241(f)(2) relief must come forward with credible and convincing testimony, or other evidence independent of his conviction record, to meet his burden of showing that his conviction involved "30 grams or less of marihuana." [8] The respondent here

---

[6] The respondent concedes in the brief in support of his appeal that the documents relating to his conviction do not specify the amount of marihuana that he was convicted of possessing: "[The respondent] merely was found to be guilty of possession of marijuana. There was no finding of any specific amount of grams by the Maricopa County Superior Court."

[7] See note 1, supra. Section 13-3405 of the Arizona Revised Statutes specifies only that a person who possesses "less than one pound" of marihuana is "guilty of a class 6 felony." Although the respondent urges on appeal that only the transcript from his criminal proceedings and his conviction record should be considered in determining the amount of marihuana that his conviction involved, the respondent has not met his burden of proving that his conviction was for "30 grams or less of marihuana" by relying on those documents alone.

Moreover, the respondent contends that the immigration judge's finding that the respondent possessed more than 30 grams of marihuana is not supported by the record of the respondent's criminal proceedings. This argument misconstrues the burden of proof requirement with respect to a section 241(f)(2) application. The Service does not have the burden of proving that the respondent's conviction was for more than 30 grams of marihuana to establish the respondent's deportability; rather, the respondent has the burden of proving that his conviction involved "30 grams or less" of marihuana to satisfy one of the statutory requirements for a section 241(f)(2) waiver of deportability.

[8] Because it is a relatively new addition to the Act, there have not been many reported decisions which discuss the section 241(f)(2) discretionary waiver or describe how the eligibility requirements for the waiver can be met. In Reid v. INS, supra, however, the United States Court of Appeals for the Third Circuit held that the Board did not abuse its discretion in refusing to reopen the deportation proceedings of an alien who requested section 241(f)(2) relief. The alien in Reid had entered a guilty plea to the charge of possession of marihuana. Years later the alien submitted an affidavit along with a motion to reopen in which he stated that his possession conviction had been for "approximately one ounce of marijuana." Reid v. INS, supra, at 10. The Court agreed with the Board, however, that the alien had not shown a prima facie case of eligibility for section 241(f)(2) relief, because the laboratory report that was issued at the time of the alien's conviction stated that 626.1 grams of marihuana had been submitted for testing in connection with the alien's criminal case. Id.

gave the following testimony at his deportation hearing in support of his section 241(f)(2) application and in support of his contention that his conviction for possession was for an amount less than 30 grams of marihuana. The respondent testified that he was arrested for possession of marihuana several days after a friend of his left some marihuana in the respondent's home. He further claimed that he was not aware that the friend had left marihuana in his home until the respondent was arrested.

The respondent explained that he had met a man, whom he ultimately identified as Jesus Torrez, when the respondent was in the check-out line of a supermarket located near his home in Arizona. He stated that his wife was with him at the supermarket, but that he was alone in the check-out line when he met Jesus Torrez. The respondent claimed that Torrez told him that he was pleased to meet a Mexican and that Torrez added: "I have not been able to meet any Mexicans here."

The respondent originally testified that after he met Torrez at the supermarket, Torrez came with him to the respondent's home; but he later stated that Torrez asked the respondent where he lived while they were talking at the supermarket, and that Torrez then followed the respondent home. The respondent noted that Torrez drove a "big blue car with California license plates" and that the car "looked like a Cadillac." He also stated that his wife did not know that Torrez had followed him to the house. According to the respondent, Torrez then came into the respondent's house, apparently with his consent.

When questioned by the Service attorney as to whether the respondent often let strangers into his house, the respondent replied that he did not let strangers into his home but that Torrez had been "very friendly." The respondent added that other than his immediate family he did not let anyone into the house.

The respondent testified further that Torrez gave him a small packet and that Torrez also left a larger bag in the respondent's house.[9] He said that Torrez placed the bag on the shelf in the bedroom closet so that the respondent's children could not reach the bag. The respondent testified, however, that he was not aware of the contents of the bag until after the police had arrested him and told him that the bag contained marihuana. According to the respondent, Torrez set the bag down and said he was going to leave it there "for a while," but he did not return for it. Three days later the police arrived and arrested the respondent.

---

[9] The respondent stated that the dimensions of the bag were 6-8 inches in length, width, and height.

The respondent stated that he smoked a cigarette consisting of the substance that was in the small packet that Torrez had given to him. He claimed that he "took a puff" from the cigarette and when he realized that "it wasn't a [tobacco] cigarette," he no longer wished to smoke it. The respondent said that he had a sore throat for a few days from the substance that he smoked. He stated that he had never seen marihuana before and that he did not realize that the substance was marihuana even after he had taken a puff from the cigarette. The respondent also claimed that he did not bother to look into the larger bag in the closet after he tasted the cigarette. Furthermore, he asserted that after he had taken "a puff" from the cigarette, he placed the remainder of the cigarette in his pocket. The respondent stated that when the police came and executed their search warrant, they found "enough [marihuana] for a cigarette" in his pocket. The police also found the larger bag when they executed the search warrant. When questioned at his deportation hearing as to whether the police had found scales and baggies during their search, the respondent claimed that those items were in the larger bag and that he had been entirely unaware of the contents of that bag.

The respondent's wife gave the following testimony concerning the circumstances of her husband's arrest. She stated that the day of the arrest was a Tuesday and that she had been away visiting relatives in Tucson during the previous Friday through Monday. She did testify, however, that she remembered going to the local supermarket with the respondent "a few days before the arrest." She stated that the children were also with her and the respondent when they went shopping on that occasion.

The respondent's wife testified further that she and the respondent went home after they had been at the supermarket. She stated that she did not remember anyone coming into the house and speaking with the respondent immediately after they returned from the supermarket. She also claimed that she did not remember seeing a bag in the bedroom closet. She further stated that she did not see a man named Jesus Torrez come to the house, that the respondent never told her about Jesus Torrez coming to the house, and that the respondent never told her about a man from the local supermarket coming to the house.

Considering the testimony given by the respondent and his wife, we find that they have not presented a plausible account of the events that led to the respondent's arrest and conviction. The respondent claimed that when he tasted the cigarette that Torrez had given to him, he coughed and had a sore throat for several days. Presumably, a person who had that kind of a reaction to the

substance would dispose of it. The respondent testified, however, that he still had the packet containing marihuana in his pocket when the police arrived. The respondent's testimony that he allowed someone whom he had recently met to place a bag in his bedroom closet in such a manner that it would be out of the reach of his children, but that he did not subsequently look into the bag, is also difficult to believe.

In addition, the testimony of the respondent's wife did not corroborate, but instead cast further doubt on, the respondent's already specious claim. The respondent's wife stated that, although she was with her husband at the supermarket and went home with him after they had been at the supermarket, she did not see a man named Jesus Torrez enter the house, and her husband did not tell her about this man who came into their home. The respondent, however, described Torrez as a friendly man who said he was happy to meet a Mexican national. The respondent claimed to have liked Torrez so much that he apparently made an exception to his practice of only allowing family members into the house. Despite the unusual visit from Torrez, which occurred shortly after the family had returned from the supermarket, the respondent's wife claimed to have no knowledge of the visit by Torrez. Furthermore, the respondent's wife's testimony that the arrest occurred on a Tuesday and that she had been in Tucson visiting relatives during the preceding Friday through Monday (4 days and 1 day, respectively, before the day of the arrest) conflicts with the respondent's testimony that he met Torrez while the respondent was shopping with his wife, that Torrez left the marihuana in the respondent's house and said that he would return for it, and that 3 days later the police arrived at the respondent's home. If the testimony of the respondent's wife is accepted as true, then she would actually have been in Tucson, rather than shopping with her husband at the local supermarket, when Torrez allegedly left the marihuana at the respondent's house 3 days before the police arrived.

Moreover, when compared with the information that is included in the police reports, the testimony that the respondent gave in support of his section 241(f)(2) application appears to be false. The respondent contends on appeal that the immigration judge erred by admitting the police reports into evidence. The respondent argues that the police reports should not have been admitted into evidence because those reports were outside the record of his criminal proceedings and because he did not have the opportunity to cross-examine the persons who prepared the reports. Although the police reports here are hearsay in nature, this does not mean that they are inadmissible in the respondent's deportation proceedings. As

we stated in *Matter of Velasquez*, 19 I&N Dec. 377 at 380 (BIA 1986), "documentary evidence in deportation proceedings need not comport with strict judicial rules of evidence; rather, in order to be admissible, such evidence need only be probative and its use fundamentally fair, so as not to deprive an alien of due process of law." *See also United States* v. *Herrera-Medina*, 609 F.2d 376, 379 (9th Cir. 1979). The police reports in the instant case are probative of the circumstances surrounding the respondent's arrest and conviction for possession of marihuana.

Other than objecting to the hearsay nature of the police reports and stating that they were not a part of his conviction record, the respondent has not explained how the immigration judge's consideration of the police reports was "fundamentally unfair." The respondent does not claim, for example, that he made statements involuntarily to the officers who arrested him, or that the police officers acted egregiously in seizing evidence at his house. *See INS* v. *Lopez-Mendoza*, 468 U.S. 1032, 1050-51 (1984); *Matter of Toro*, 17 I&N Dec. 340, 343 (BIA 1980). Furthermore, with respect to the admissibility of prior statements, the regulations specifically provide:

> The special inquiry officer may receive in evidence any oral or written statement which is material and relevant to any issue in the case previously *made by the respondent or any other person during any investigation*, examination, hearing, or trial. 8 C.F.R. § 242.14(c) (1988) (emphasis added); *see also Matter of Velasquez*, *supra*, at 380. Thus, any prior statements that the respondent made during a previous investigation that are relevant to his eligibility for section 241(f)(2) relief are admissible in his deportation proceedings.

In addition, the admission into the record of the information contained in the police reports is especially appropriate in cases involving discretionary relief from deportation, where all relevant factors concerning an arrest and conviction should be considered to determine whether an alien warrants a favorable exercise of discretion. Based on all of the foregoing, we conclude that the immigration judge did not err in admitting the police reports into evidence, and we also will consider the information contained in those reports on appeal.

The certified copy of the police reports in the record includes a list of items that were seized at the respondent's residence the day that the search warrant was executed.[10] Among the items seized was a clear plastic baggie containing a vegetable substance that was taken from the respondent's left front pocket. This item was sent to the laboratory at the Arizona Department of Public Safety

---

[10] According to the police reports, the search warrant was executed on Tuesday, September 10, 1985. The reports that were prepared by the officers who executed the search warrant were also written on September 10, 1985.

and was identified as 1.93 grams of marihuana. The police officers also seized a brown paper bag, containing three clear plastic baggies of vegetable substance, from the top shelf of the closet in the respondent's master bedroom. The laboratory determined that the bag contained a total of 580 grams of marihuana.[11] The police officers also found both a scale and a package of wrapping papers inside a shoebox on the top shelf of the closet in the respondent's master bedroom. Another clear plastic baggie, which contained what was subsequently determined to be 1.59 grams of marihuana, was found in the bottom drawer of a cabinet located in the closet of a separate bedroom.

One of the police reports included in the record was prepared by Officer Melendez, who states that he questioned the respondent after informing him of his *Miranda* rights in Spanish. According to Officer Melendez, the respondent told him at the time of the arrest that the marihuana which had been found in the paper bag did not belong to the respondent, but belonged to "Francisco Torres." Officer Melendez's report also indicates that the respondent claimed that Torres, whom he and his wife met when they were coming out of the local supermarket, had paid him $40 for holding the marihuana while Torres was in California. Officer Melendez notes further that the respondent informed him that Torres drove a large blue car with California license plates and that Torres approached the respondent and his wife and told them how happy he was to meet people from Mexico. Officer Melendez states in his report that he asked the respondent where he obtained the marihuana that was found in his pocket, and the respondent replied that a friend of his, whom he refused to identify, had left it in his living room. The respondent also informed Officer Melendez at this time that he did occasionally smoke marihuana.

The testimony that the respondent gave at his deportation hearing concerning the circumstances surrounding his arrest and conviction contradicts the statements, as reported by Officer Melendez, that the respondent made at the time of his arrest. The respondent claimed at his deportation hearing that he did not smoke marihuana and that he became ill the one time that he tried it. He stated to Officer Melendez, however, that he occasionally smoked marihuana. The respondent also claimed at his hearing that he did not know that "Jesus Torrez" had left marihuana at his home until the police arrived. Yet, he told Officer Melendez that "Francisco Torres" had paid the respondent to hold Torres' marihuana. The respondent asserted before the immigration judge that his wife did

---

[11] *See* note 8, *supra*.

not know about Torrez or his visit; but when he was arrested, the respondent stated that Torres had introduced himself to both the respondent and his wife.

The respondent's testimony concerning the evidence that was seized at his home also contradicts the police report regarding the evidence that was found there. The respondent claimed that the officers found only a small packet of marihuana in his pocket and a larger bag containing marihuana in the bedroom closet. The police report, however, indicates that a separate packet of marihuana was found in another of the respondent's bedrooms. The respondent also testified that the scales and baggies which the police found during their search came from the paper bag containing the marihuana and that he was not aware of anything that was inside that bag. According to the police report, though, a scale and a package of wrapping papers were found in a separate shoebox that was located on the same shelf where the brown paper bag containing marihuana was found.

The testimony that the respondent and his wife gave concerning the circumstances of his arrest and conviction was not persuasive. The foregoing comparison between the testimony that the respondent gave at his hearing and the statements that he made at the time of his arrest also casts doubt on the respondent's explanation of the circumstances surrounding his arrest and conviction. Therefore, since the respondent's conviction record does not establish the amount of marihuana that the respondent was convicted of possessing, and because the respondent has not come forward with convincing testimony or other evidence to demonstrate that his conviction related to 30 grams or less of marihuana, we conclude that the respondent has not met his burden of proving that he was convicted of a "single offense of simple possession of 30 grams or less of marihuana."

In his decision, the immigration judge found that the respondent had established all of the elements for section 241(f)(2) relief other than the "30 grams or less" element. We agree with the immigration judge that the respondent did not meet his burden with respect to the "30 grams or less" requirement but express no opinion concerning whether the respondent has satisfied the remaining requirements for section 241(f)(2) eligibility. Accordingly, we find that the respondent has not demonstrated statutory eligibility for a section 241(f)(2) waiver of deportability.

Because we conclude that the respondent has not demonstrated eligibility for section 241(f)(2) relief, we need not address the issue of whether he merits a favorable exercise of discretion. The respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.