# United States Court of Appeals
## For the First Circuit

No. 10-2286

JULIO FAUSTINO GUERRERO; ANA VILMA ACEVEDO;
JORGE GUERRERO-ACEVEDO,

Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF A FINAL ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lipez and Howard,
<u>Circuit Judges</u>.

<u>Julio A. Vázquez</u> and <u>Vázquez and Shin, LLP</u>, on brief for petitioners.
<u>Tony West</u>, Assistant Attorney General, Civil Division, <u>Melissa Neiman-Kelting</u>, Senior Litigation Counsel, Office of Immigration Litigation and <u>Anthony J. Messuri</u>, Trial Attorney, on brief for respondent.

January 31, 2012

**HOWARD**, **Circuit Judge**.    Petitioner Julio Faustino Guerrero is a Salvadoran national.  He seeks review of an order of the Board of Immigration Appeals ("BIA") approving the denial of his applications for asylum and withholding of removal.  Discerning no error, we deny the petition.

Guerrero entered the United States in February 1992 without being admitted or paroled.  Later that year, he filed an affirmative asylum application, asserting that he had been persecuted and had a well-founded fear of future persecution on account of his political beliefs.  Following a long, unexplained hiatus, federal authorities initiated removal proceedings against him in March 2007.  Guerrero conceded removability but renewed his request for asylum and withholding of removal.[1]

The gravamen of the petitioner's claim for relief is mistreatment suffered at the hands of the Farabundo Martí National Liberation Front ("FMLN") guerillas, who occupied a base in his home village throughout much of the more than decade-long Salvadoran civil war.  On approximately three occasions during that

---

[1]  The government simultaneously sought removal of the petitioner's spouse Ana Vilma Acevedo, and his son Jorge Guerrero-Acevedo, who entered the United States illegally in 2002 and 2006, respectively.  Both wife and child are named as derivative beneficiaries on the petitioner's application.  Because their rights are dependent on those of the petitioner, we discuss the case as if it involved Guerrero alone.  Our decision applies, of course, to all parties.

period,[2] guerilla members forced him at gunpoint to carry wounded guerillas to safety; on one of those occasions, the injuries of the wounded guerilla were such that his intestines hung over Guerrero's shoulder. The guerillas also thrice conscripted Guerrero to assist in barricading roads and detonating bombs to ambush government troops, and occasionally forced him to work in the fields as a decoy. Additional assistance was often demanded in the form of food, and Guerrero and his family were forced to go hungry in order to comply. The guerillas also rounded up Guerrero and the other villagers at gunpoint and obliged them to attend FMLN political rallies on roughly ten occasions.

Guerrero opposed the guerillas, who he believed would "turn El Salvador into another Cuba." Although he never openly resisted the guerillas for fear of harm, he asserted that it was well known in his village of only approximately three thousand inhabitants who supported the guerillas and who did not.

After reviewing the petitioner's testimony and documentary evidence, the immigration judge ("IJ") found the petitioner credible but concluded that he had failed to substantiate a cognizable claim of past or future persecution. Although the IJ accepted Guerrero's testimony that his political

---

[2] There exist minor discrepancies between the petitioner's asylum application and hearing testimony regarding the exact dates and the number of occasions on which these and the other incidents described herein occurred. In light of the immigration judge's favorable credibility determination, however, these discrepancies are immaterial to our analysis.

opinion was either known or presumed by the guerillas, she determined that Guerrero had failed to demonstrate a nexus between that opinion and the mistreatment that he suffered. The IJ further found that while the events described were "positively frightening and at times utterly gruesome," they were not sufficiently severe to rise to the level of persecution. Finally, the IJ concluded that Guerrero's fear of future persecution, though genuine, was not objectively reasonable in light of the peace accords signed between the guerillas and the Salvadoran government in 1991 and the absence of evidence that any remaining guerillas would continue to harbor an interest in the petitioner sixteen years after he left El Salvador. Consequently, the IJ denied petitioner's requests for asylum and withholding of removal.

On appeal, the BIA affirmed. The agency agreed that the petitioner had established neither a nexus between the allegedly persecutory acts and a statutorily protected ground nor an objectively reasonable fear of future persecution. This timely petition for judicial review followed.

Where, as here, the BIA adopts and affirms a portion of the IJ's decision while also providing additional analysis, we review the adopted portions of the IJ's decision as well as the BIA's additions. Acevedo-Aquilar v. Mukasey, 517 F.3d 8, 9 (1st Cir. 2008) (citing Stroni v. Gonzales, 454 F.3d 82, 87 (1st Cir. 2006); Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005)). Our review proceeds according to the substantial evidence standard,

-4-

which demands deference to agency findings of fact that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quotation marks omitted). Thus, rejecting a factual determination is inappropriate unless the record evidence compels a conclusion to the contrary. Id. at 481 n.1; see also Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003) ("Merely identifying alternative findings that could be supported by substantial evidence is insufficient to supplant the BIA's findings.").

To be eligible for asylum, an alien must establish that he is unwilling or unable to return to his home country due to a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see id. § 1158 (b)(1)(B). An applicant may carry this burden by demonstrating past persecution, which creates a rebuttable presumption that a well-founded fear of future persecution endures. 8 C.F.R. § 1208.13(b)(1). A well-founded fear may be established regardless of whether there was past persecution, id. § 1208.13(b)(2), but the petitioner here makes no effort to argue that he has established fear of future persecution independent from his claim of past persecution.[3] See

_____

[3] This argument was absent from the petitioner's brief to the BIA, as well. The government asserts that any potential challenge to the IJ's finding that he did not have an objectively reasonable fear of future prosecution was therefore abandoned long before

-5-

Makhoul v. Ashcroft, 387 F.3d 75, 82 (1st Cir. 2004). Accordingly, proof of past persecution is his only remaining avenue to potential relief.

To demonstrate past persecution, Guerrero must produce "convincing evidence of a causal connection" between the harm that he endured and a statutorily protected ground - in this case, his political belief. Amouri v. Holder, 572 F.3d 29, 33 (1st Cir. 2009). The Supreme Court long ago cautioned that in the context of alleged persecution at the hands of guerilla groups, "the mere existence of a generalized 'political' motive underlying the guerillas' [mistreatment] is inadequate to establish . . . the proposition that [a petitioner] [suffered] persecution on account of political opinion . . . ." Elias-Zacarias, 502 U.S. at 482. Rather, the petitioner must provide evidence, whether direct or circumstantial, that the persecutor was motivated at least in part by the victim's political opinion. Id. at 817; see also Sompotan v. Mukasey, 533 F.3d 63, 69, 69 n.3 (1st Cir. 2008) (elucidating the standard for assessing mixed-motives in applications that, like Guerrero's, were filed prior to the May 11, 2005 effective date of the REAL ID Act, 8 U.S.C. § 1158(b)(1)(B)(I)). Absent such evidence, we have consistently held that "the classic pattern of

_____

arrival at our door. See Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) ("Under the exhaustion of remedies doctrine, theories insufficiently developed before the BIA may not be raised before this court." (citation omitted)); see also 8 U.S.C. § 1252(d)(1). Because the claim has in any event been waived in the petition for judicial review, we need not address this contention.

forced recruitment is far and away the more plausible explanation" for compelled assistance in the guerillas' cause. Velasquez-Valencia v. INS, 244 F.3d 48, 50 (1st Cir. 2001); accord Tobon-Marin v. Mukasey, 512 F.3d 28, 32 (1st Cir. 2008); Bartolo-Diego v. Gonzales, 490 F.3d 1024, 1028 (1st Cir. 2007).

The petitioner challenges the agency's determination that the mistreatment that he suffered was "more in the nature of [] forced conscription than of persecut[ion]." He emphasizes that unlike in Elias-Zacarias and related cases, the guerillas knew his political view and even attempted to change it by forcing him to attend political meetings. On the basis of this evidence, he asserts that whatever the guerillas' other reasons for targeting him for mistreatment, one of their motives was clearly his political opinion. For the reasons discussed below, we do not believe the evidence mandates a finding to that effect.

We begin with the evidence, credited by the IJ and BIA, that the petitioner's political opinion was either known or presumed by the guerillas. While such evidence is certainly necessary to the petitioner's claim, see, e.g., Elias-Zacarias, 502 U.S. at 482 (denying petition in light of lack of evidence that petitioner ever expressed any political support for or opposition to either side of conflict or that the guerillas ever attributed to him a political motive for refusal to join ranks); Tobon-Marin, 512 F.3d at 31-32 (same); Bartolo-Diego, 490 F.3d at 1027 (same); Velasquez-Valencia, 244 F.3d at 50 (same), it is not sufficient.

-7-

It is not enough to point to the guerillas' presumed knowledge of Guerrero's opposition to their cause, or even to argue, as the petitioner does, that the guerillas had "very little regard for his safety and well-being" because of it. To demonstrate persecution "on account of" his political belief, the petitioner must also provide specific evidence that the FMLN targeted him as a means to punish him for the pro-government, anti-guerilla view that they attributed to him. See Tobon-Marin, 512 F.3d at 31 (citations omitted).

That the guerillas forced the petitioner to attend political rallies along with his fellow villagers does not unarguably demonstrate such politically-motivated punitive intent. While the Board might have inferred that the guerillas forced the petitioner to attend these rallies in order to punish him for and to overcome his opposition to their cause, it could also have reasonably concluded that the events had less to do with the petitioner's political beliefs than with the guerillas' own political and military strategy. Cf. Elias-Zacarias, 502 U.S. at 482 ("[P]ersecution on account of . . . political opinion . . . is persecution on account of the victim's political opinion, not the persecutor's."). It is plausible, for example, that the guerillas rounded up the petitioner and his fellow villagers in order to create an illusion of greater popular support for what was, after all, alleged to be a popular cause. They may also have sought, in a classic tactic of guerilla warfare, to blur the lines between

-8-

their forces and the civilian population. "Where, as here, the constellation of facts and circumstances alleged by the asylum applicant . . . support two or more competing inferences, the [agency's] choice among those inferences cannot be deemed erroneous." Aguilar-Solis v. INS, 168 F.3d 565, 571 (1st Cir. 1999) (citation omitted). A fortiori, the record evidence does not compel the conclusion that the petitioner's forced attendance at political rallies - much less any of the other incidents that comprise his claim - bore a nexus to a protected ground.[4]

Having determined that the petitioner has failed to surmount the standard of review with respect to his claim of past persecution, we need not linger over his remaining claims. Inasmuch as he has failed to establish past persecution, his arguments with respect to the possibility of relief under the humanitarian exception are moot.[5] Moreover, his unsuccessful bid

---

[4] The IJ also found that the events described by Guerrero were not sufficiently severe to rise to the level of persecution, but the BIA did not reach that issue.

[5] In an apparent acknowledgment of the difficulty that he would face in maintaining a presumption of a well-founded fear of persecution arising out of past persecution, cf. Aguilar-Solis, 168 F.3d at 572 (holding that the Salvadoran peace accords constituted changed country conditions supporting the agency's finding that the petitioner's fear of the FMLN was not objectively reasonable), the petitioner notes that even in the event of a government rebuttal he may still be granted asylum under the so-called "humanitarian exception," see 8 C.F.R. § 1208.13(b)(1)(iii). The petitioner recognizes, however, that relief under the humanitarian exception is available only to applicants who successfully establish past persecution. See id. As the petitioner has not made such a showing, we do not reach his claim that the IJ should have made a finding regarding eligibility for relief under this exception.

for asylum necessarily precludes his counterpart claim for withholding of removal. See Morgan v. Holder, 634 F.3d 53, 60 (1st Cir. 2011) (citing Amouri, 572 F.3d at 35).

For the reasons elucidated above, the petition for judicial review must be **denied**.[6]

---

[6] Notwithstanding our disposition of the petition, Guerrero is not without reprieve, at least temporarily. Guerrero has been granted Temporary Protected Status ("TPS") pursuant to 8 U.S.C. § 1254a. See also U.S. Citizenship and Immigration Serv., Dep't of Homeland Sec., DHS Docket No. USCIS 2007-0028, Extension of the Designation of El Salvador for Temporary Protected Status and Automatic Extension of Employment Documentation for Salvadoran TPS Beneficiaries (extending El Salvador's TPS designation, previously set to expire on March 9, 2012, through September 9, 2013). Although TPS does not preclude the initiation of deportation proceedings or the entry of an order of removal, it does prohibit such an order from being executed during the pendency of the designation. 8 U.S.C. § 1254a(a)(1)(A) ("[T]he Attorney General . . . shall not remove the alien from the United States during the period in which [TPS] status is in effect . . . ."); see also In re Sosa Ventura, 25 I&N Dec. 391 (BIA 2010) ("[T]he respondent is protected from execution of a removal order during the time her TPS status is valid . . . ."); cf. Yao v. INS, 2 F.3d 317, 319 (9th Cir. 1993) (concluding that alien's pending application for legalization of immigration status as Special Agricultural Worker did not preclude initiation of deportation proceedings or entry of deportation order, but did prohibit execution of the order). Consequently, Guerrero should not be ordered to depart from the United States unless and until his TPS status expires or is otherwise forfeited.