# In re Rodolfo AVILA-PEREZ, Respondent

File A96 035 732 - Houston

*Decided February 9, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Section 201(f)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1151(f)(1) (Supp. II 2002), which allows the beneficiary of an immediate relative visa petition to retain his status as a "child" after he turns 21, applies to an individual whose visa petition was approved before the August 6, 2002, effective date of the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002), but who filed an application for adjustment of status after that date.

(2) The respondent, whose visa petition was approved before August 6, 2002, and who filed his adjustment of status application after that date, retained his status as a child, and therefore an immediate relative, because he was under the age of 21 when the visa petition was filed on his behalf.

FOR RESPONDENT: Timothy S. Hart, Esquire, Houston, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Monica Thompson, Assistant Chief Counsel

BEFORE:  Board Panel: OSUNA, Acting Chairman; FILPPU and PAULEY, Board Members.

PAULEY, Board Member:

In a decision dated September 13, 2005, an Immigration Judge found the respondent statutorily ineligible for adjustment of status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (2000), because he did not have a visa immediately available to him at the time his adjustment application was filed, having lost his status as the child of a United States citizen, and therefore as an immediate relative, when he turned 21 years of age. The respondent has appealed from that decision. The appeal will be sustained, and the record will be remanded for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The relevant events in this case are undisputed. The respondent was born on April 4, 1976. On August 30, 1996, his mother filed a Petition for Alien Relative (Form I-130) to accord him immediate relative status as the child of

a United States citizen. The visa petition was approved on November 1, 1996, with a priority date of August 29, 1996. The respondent overstayed the period of his nonimmigrant visa and subsequently filed an Application to Register Permanent Residence or Adjust Status (Form I-485) on October 15, 2003.

The Department of Homeland Security ("DHS"), formerly the Immigration and Naturalization Service ("INS"), initiated removal proceedings against the respondent and moved to pretermit his adjustment application. The DHS argued that the respondent was ineligible to be classified as a child pursuant to the provisions of the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002) ("CSPA"), because he had "aged out," i.e., reached the age of 21, prior to its August 6, 2002, enactment date. According to the DHS, the CSPA only applies to an individual who "aged out" before August 6, 2002, if his visa petition remained pending on that date or, if his visa petition had been previously approved, an adjustment application had been filed on or before August 6, 2002, on which no final determination had been made as of that date. The DHS argued that the respondent did not qualify for CSPA benefits and was therefore ineligible to adjust his status because he was properly classified as the unmarried son of a United States citizen, to whom a visa was not immediately available.

The respondent opposed the DHS's motion, contending that he was eligible for the benefits of the CSPA because his visa petition was approved before the statute's August 6, 2002, effective date and because his October 15, 2003, adjustment application was the first use of his approved visa petition. Thus, he argued that he retained his status as the child of a United States citizen and was therefore an immediate relative, who was not subject to visa availability.

## II. PROVISIONS OF THE CSPA

The CSPA amended the Act to provide "age-out" protection for certain individuals who were classified as "children" at the time that a visa petition or application for permanent residence was filed on their behalf, but who turned 21 before their petition or application was ultimately processed. The relevant provision of the CSPA in this case is section 2, which is codified at section 201(f)(1) of the Act, 8 U.S.C. § 1151(f)(i) (Supp. II 2002).[1] That section provides that an alien's status as a child is determined as of the date

---

[1] Section 201(f)(1) of the Act provides as follows:

> Rules for Determining Whether Certain Aliens Are Immediate Relatives
>    (1) Age on petition filing date
> [F]or purposes of subsection (b)(2)(A)(i), a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 101(b)(1) shall be made using the age of the alien on the date on which the petition is filed with the Attorney General under section 204 to classify the alien as an immediate relative under subsection (b)(2)(A)(i).

on which a visa petition to classify him as an immediate relative is filed. Thus, under the provisions of the CSPA, if the beneficiary of a visa petition is under the age of 21 at the time of filing, he retains his status as a "child," even after he turns 21. *See* section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (2000).

The effective date portion of the CSPA is section 8, which states the following:

> The amendments made by this Act shall take effect on the date of the enactment of this Act [August 6, 2002] and shall apply to any alien who is a derivative beneficiary or any other beneficiary of —
>
> (1) a petition for classification under section 204 of the Immigration and Nationality Act (8 U.S.C. 1154) approved before such date *but only if a final determination has not been made on the beneficiary's application for an immigrant visa or adjustment of status to lawful permanent residence pursuant to such approved petition*;
>
> (2) a petition for classification under section 204 of the Immigration and Nationality Act (8 U.S.C. 1154) pending on or after such date; or
>
> (3) an application pending before the Department of Justice or the Department of State on or after such date.

CSPA § 8, 116 Stat. at 930 (emphasis added).

In interpreting this provision, the Immigration Judge concluded that the benefits of the CSPA did not apply to the respondent because: (1) he turned 21 before August 6, 2002; and (2) although he was the beneficiary of a visa petition approved before August 6, 2002, he had no pending adjustment application filed on or before that date. Thus, the Immigration Judge implicitly interpreted section 8(1) to include a requirement that the application for adjustment of status must be filed before August 6, 2002, the effective date of the CSPA.

## III. ISSUES PRESENTED ON APPEAL

The outcome of this case depends on whether the effective date provision in section 8(1) of the CSPA applies only to individuals who filed an adjustment application on or before August 6, 2002. If the CSPA requires an alien with an approved visa petition to have filed his adjustment application before August 6, 2002, then the CSPA does not apply to the respondent, whose adjustment application was filed on October 15, 2003.[2] Without the

---

[2] We note that the respondent asserts on appeal for the first time that he applied for an immigrant visa in 1996 in Ciudad Juarez, Mexico, and that a final determination has never been made on that application. We recognize that if this is true, the respondent would clearly be eligible for the benefits of the CSPA, and we would not need to address the timeliness of his adjustment application to obtain the benefits of the CSPA. Nonetheless, we cannot rely on the respondent's assertion to resolve this appeal. First, we note that the respondent's statement in his brief is directly contrary to his statement in his opposition to

(continued...)

benefit of the CSPA, the respondent aged out on his 21st birthday on April 4, 1997, and, consequently, could only obtain a visa as a first-preference unmarried son of a United States citizen, to whom an immigrant visa was not immediately available at the time of his immigration proceedings.[3]  *See* sections 201(a)(1), 203(a)(1) of the Act, 8 U.S.C. §§ 1151(a)(1), 1153(a)(1) (2000); Department of State Visa Bulletin, Vol. VIII, No. 85 (Sept. 2005). Accordingly, if the CSPA does not apply, then the respondent is ineligible to adjust his status under section 245(a) of the Act.

If, however, the CSPA does not require an alien with an approved visa petition to have filed his adjustment application before its effective date, then the CSPA applies to the respondent because his visa petition was approved before August 6, 2002.  In that case, the respondent retained his status as a child because he was 20 years old and unmarried when his mother filed the visa petition on his behalf.  *See* sections 101(b)(1), 201(b)(2)(A)(i), (f)(1) of the Act.  When the visa petition was approved, the respondent had an immigrant visa immediately available to him because it was not subject to the annual numerical limitations that can delay the availability of family-based preference petitions.  *Compare* section 201(a)(1) of the Act *with* section 201(b)(2)(A)(i) of the Act.  Consequently, if the CSPA provisions apply to this case, the respondent, who appears to be otherwise admissible, may be eligible to adjust his status under section 245(a) of the Act.

## IV.  APPLICABILITY OF THE CSPA

### A.  Plain Language

We must employ the principles of statutory construction to ascertain whether section 8(1) of the CSPA requires an alien with a visa petition that was approved before August 6, 2002, to have filed his adjustment application on or before that date.  Proper statutory construction begins with the words of the statute, which should be given their ordinary and natural meaning. *Bailey v. United States*, 516 U.S. 137, 144-45 (1995); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984).  If an

---

[2]  (...continued)
the Government's motion to pretermit that his October 15, 2003, adjustment application was his first use of his approved visa petition.  Second, the respondent has not provided a copy of his 1996 visa application, and there is no other evidence in the record to corroborate that such a visa application was filed.  While it is certainly possible that the respondent filed a visa application in 1996 on which no final determination has been made, we cannot dispose of this case on that basis because of the ambiguities and omissions in the record currently before us.

[3]  We note that even under the most recent Department of State Visa Bulletin, a visa would not be immediately available to the respondent as an unmarried son of a United States citizen with an August 29, 1996, priority date.  *See* Department of State Visa Bulletin, Vol. VIII, No. 102 (Feb. 2007).

ambiguity is perceived when a provision of the statute is read in isolation, it is often clarified when it is interpreted in the context of the remainder of the statutory scheme. *Bailey v. United States*, *supra*, at 146.

Reading section 8(1) of the CSPA in isolation, we find an ambiguity in that provision. Section 8(1) contains no explicit requirement that an adjustment application be pending as of the effective date of the CSPA. On the other hand, it is certainly possible to construe the CSPA as having an implicit requirement that an adjustment application must have been pending on its effective date. That is, to make the CSPA applicable to a beneficiary of a previously approved visa petition for whom "no final determination has been made" on his adjustment application would seem to imply that such an application was already filed on or before the effective date of the CSPA.[4] Because section 8(1) of the CSPA is subject to two reasonable interpretations, we look to the remaining provisions of that section for clarification. *See Bailey v. United States*, *supra*, at 145-46 (providing that the meaning of statutory language depends on context).

Sections 8(2) and 8(3) of the CSPA expressly provide that the statute applies to the beneficiary of an immigrant petition whose application for an immigrant visa or adjustment of status is "pending" on or after August 6, 2002. *See* CSPA §§ 8(2), 8(3), 116 Stat. at 930. Where Congress includes particular language in one section of a statute but omits it in another section of the same statute, it is generally presumed that Congress acts intentionally in the inclusion or exclusion. *INS v. Cardoza-Fonseca*, *supra*, at 432; *Russello v. United States*, 464 U.S. 16, 23 (1983). Had Congress intended to restrict the protections of the CSPA under section 8(1) to only those individuals who had visa or adjustment applications "pending" as of the date of enactment, it presumably would have expressly so stated, as it stated that the petitions and applications must be "pending" in the immediately following subsections. *Cf. Russello v. United States*, *supra*, at 23 (stating that if Congress had intended to restrict "an interest" in a particular subsection to one

---

[4]  We observe that before the functions of the INS were transferred to the DHS, the INS issued an internal policy memorandum on February 14, 2003, offering guidelines to its field officers as to the proper interpretation of the CSPA. *See* Memorandum of Johnny N. Williams, Executive Associate Commissioner, Office of Field Operations, to INS Officials (Feb. 14, 2003), *reprinted in* 80 Interpreter Releases, No. 11, Mar. 17, 2003, at 414. In that memorandum, the INS construed section 8(1) of the CSPA to require that the adjustment application must have been filed on or before August 6, 2002. While such policy guidelines are not binding on the Board, we will nonetheless adopt an agency's policy where appropriate. *See Matter of Singh*, 21 I&N Dec. 427, 430-31 (BIA 1996). However, in the instant case, the policy memorandum offers no guidance on why the DHS chose to construe section 8(1) in such a manner or on how its construction furthers the objectives and policy of the CSPA.

involving an enterprise, it presumably would have done so expressly, as it did in the immediately following subsection).[5]

We find further support for a broader interpretation of section 8(1) in section 3 of the CSPA, 116 Stat. at 928. In that substantive section, Congress expressly provided that the age of a child of a lawful permanent resident would be determined based on a special mathematical formula, but "only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability." *See* CSPA § 3, 116 Stat. at 928. If Congress had intended to require aliens under section 8(1) to have filed their adjustment applications within a specified time, it presumably would have expressly so stated, as it did in section 3 of the CSPA. *Cf. Russello v. United States*, *supra*, at 23.

Nevertheless, we cannot conclude that section 8(1) of the CSPA is unambiguous, even when read in conjunction with section 3, as well as within the context of section 8. While it is certainly reasonable to interpret section 8(1) more broadly in light of the other CSPA provisions, those provisions do not clearly resolve the textual ambiguity in section 8(1). Where Congress's intent is not plainly expressed, we must determine a reasonable interpretation of the language that effectuates its intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). To discern congressional intent, we turn to the legislative history of the CSPA. *See Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 160 (BIA 2001).

## B. Legislative History

Upon review of the legislative history of the CSPA, we find no indication that Congress intended to exclude from coverage of the CSPA those individuals whose visa petitions were approved before its effective date, but who waited until after its effective date to file an adjustment application. The CSPA was created to remedy the problem of minor children of United States citizens losing their immediate relative status and being demoted to the family first-preference category as a result of the INS's backlog in adjudicating visa

---

[5] We note that the United States Court of Appeals for the Ninth Circuit, the only court that has addressed the effective date language of the CSPA in a published decision, has construed section 8(1) of the CSPA to broaden the statute's applicability beyond individuals whose applications were awaiting agency determinations, so as to also include those individuals whose appeals were pending in the courts. *Padash v. INS*, 358 F.3d 1161, 1171-72 (9th Cir. 2004). In so holding, the court observed that to construe the phrase "final determination" in section 8(1) to mean a final determination before the agency would render section 8(1) duplicative of section 8(3). *Id.* at 1171. Although that decision is not on point and not binding in this case (which is governed by Fifth Circuit jurisprudence), it is still noteworthy that the Ninth Circuit ultimately concluded that section 8(1) broadened the applicability of the CSPA beyond individuals whose applications were pending before an agency. *Id.*; *see also Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989) (providing that the Board follows circuit precedent in cases arising in that circuit).

petitions and applications for adjustment of status. *See* H.R. Rep. No. 107-45 at 1-3 (2001), *reprinted in* 2002 U.S.C.C.A.N. 640, 641-42, 2001 WL 406244; *see also* 147 Cong. Rec. H2901-01 (daily ed. June 6, 2001) (statements of Reps. Gekas, Jackson-Lee, and Smith), 2001 WL 617985. To prevent these individuals from "aging out" because of INS processing delays, Congress decided that a child's age should be determined by the date his visa petition was filed, not as of the date the INS reviewed his application, as it would have been under the former law. H.R. Rep. No. 107-45 at 4.

There is no indication in the legislative history that Congress intended to exclude from coverage of the CSPA those aliens whose visa petitions were approved before the effective date of the statute merely because they waited until after its enactment to file an adjustment application. Indeed, it would effectuate Congress's intent to protect a child whose visa petition was approved before August 6, 2002, and whose adjustment application was filed after that date, but who would have otherwise "aged out" because of processing delays.

We turn to the evolution of the effective date language of the CSPA for further guidance. In the earliest draft of the bill, which only protected children of United States citizens, the provisions of the statute were to apply to all beneficiaries of visa petitions filed before, on, or after its date of enactment. H.R. Rep. No. 107-45 at 6. The Department of Justice expressed its concern that the unlimited scope of this retroactivity provision would create a huge administrative burden on the agency by potentially requiring the reopening of completed adjudications as far back as 1952. *Id.* The Department recognized, however, that Congress "may seek to address cases of children who have aged out in the past" and proposed a "reasonable limit to retroactivity." *Id.*

When the bill subsequently passed the United States House of Representatives, the sweeping retroactivity provision was replaced by language applying the CSPA to "all petitions and applications pending before the Department of Justice or the Department of State on or after such date." H.R. 1209, 107th Cong. (2001); *see also* 147 Cong. Rec. H2901-01 (daily ed. June 6, 2001) (statement of Rep. Sensenbrenner), 2001 WL 617985. Subsequently, the United States Senate, in addition to extending the protections of the CSPA to children of lawful permanent residents, temporary residents, asylees, and refugees, created the effective date language that was ultimately enacted. S. 672, 107th Cong. (2002); *see also* 148 Cong. Rec. S5558-02 (daily ed. June 13, 2002) (statement of Sen. Reid), 2002 WL 1300166. The Senate's effective date provision essentially subsumed the House's language into sections 8(2) and 8(3) of the CSPA and created the new provisions of section 8(1).

The Senate offered no explanation for why it created a new effective date provision aimed explicitly at individuals, like the respondent, whose visa petitions were approved before the effective date of the CSPA. It is

reasonable to conclude, however, that by including section 8(1) in the CSPA, the Senate intended to expand the coverage of the statute beyond those individuals whose visa petitions and applications were pending on the date of the CSPA to also protect those individuals whose visa petitions were approved before the effective date, but only if their applications had not already been finally adjudicated. That is, the House's revised effective date language plainly would have covered all individuals whose adjustment applications were pending before the agency on or after August 6, 2002, without regard to when their visa petitions were approved. H.R. 1209, 107th Cong. In that regard, the new language in section 8(1) extended more protection by ensuring that certain individuals whose visa petitions were approved before August 6, 2002, were protected, without affording reopening to those whose applications for a visa or adjustment of status had already been subject to a final determination.[6]

We conclude that section 8(1) of the CSPA, as enacted, does not require an individual whose visa petition was approved before its effective date to have an adjustment application pending as of the date of its enactment. Our interpretation of section 8(1) is based on the language of that section, viewed both in isolation and in context. We also find support for our interpretation of the section in the legislative history of the CSPA that recounts its purpose, as well as in the evolution of its effective date language.[7]

## V. CONCLUSION

In light of the foregoing, we disagree with the Immigration Judge's conclusion that the respondent was required to have his adjustment application pending as of August 6, 2002, to receive the benefits of the CSPA. Consequently, because he was still a "child" pursuant to the provisions of the CSPA, he was an immediate relative and a visa was immediately available to him. *See* sections 101(b)(1)(A), 201(b)(2)(A)(i), (f)(1) of the Act. He also otherwise appears to be statutorily eligible for adjustment of status. Accordingly, the respondent's appeal will be sustained.

Given the passage of time since the Immigration Judge rendered her decision and the fact that she did not fully consider all the relevant factors,

---

[6] We note that in *Padash v. INS*, *supra*, at 1171-72, the Ninth Circuit also found support for its expansion of the CSPA's applicability in the evolution of section 8.

[7] We recognize that the issue presented in the respondent's case does not reflect the principal concern expressed by Congress in the legislative history of the CSPA. As we have already discussed, Congress voiced concern for children who, under the former law, "aged out" during the INS's delay in processing visa petitions and applications for adjustment of status. Nevertheless, nothing in the language or legislative history of the CSPA indicates that Congress intended to foreclose individuals in the respondent's circumstances from obtaining relief under the CSPA.

however, we find it appropriate to remand the record to the Immigration Judge to determine whether the respondent is eligible for adjustment of status and whether he merits a favorable exercise of discretion. If necessary, the appropriate background and security checks should also be conducted before the entry of a final order. *See* Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743, 4752-54 (Jan. 31, 2005).

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.