# Matter of Maria Armida SOSA VENTURA, Respondent

*Decided November 23, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A grant of Temporary Protected Status ("TPS") waives certain grounds of inadmissibility or deportability solely for the limited purpose of permitting an alien to remain and work temporarily in the United States for the period of time that TPS is effective.

(2) It is not proper to terminate an alien's removal proceedings based on a grant of TPS.

FOR RESPONDENT: Roy K. Petty, Esquire, Dallas, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Margaret M. Price, Assistant Chief Counsel

BEFORE: Board Panel: GRANT, MALPHRUS, and MULLANE, Board Members.

MALPHRUS, Board Member:

In a decision dated September 17, 2007, an Immigration Judge found that the respondent was not properly in removal proceedings and terminated the proceedings with prejudice. The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained, the proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador. On February 6, 2007, the DHS issued a Notice to Appear (Form I-862), charging that the respondent is removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2006), as an alien who is in the United States without being admitted. In proceedings before the Immigration Judge, the respondent admitted the factual allegations in the Notice to Appear, with the exception of the point of entry.[1] During the proceedings, the DHS

---

[1] The respondent stated that she entered at Brownsville, Texas, rather than Laredo, Texas, as alleged in the Notice to Appear. The DHS does not dispute the respondent's statement, which, in any event, does not affect her removability.

granted the respondent temporary protected status ("TPS") under section 244 of the Act, 8 U.S.C. § 1254a (2006).

Both parties initially requested administrative closure at the master calendar hearing that was held subsequent to the grant of TPS. However, the Immigration Judge did not agree with this approach and terminated the proceedings with prejudice.[2] Upon de novo review of the legal issues in this case, we find that the Immigration Judge erred in determining that the respondent was not properly in removal proceedings. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2010); *see also Matter of A-S-B-*, 24 I&N Dec. 493 (BIA 2008). We will therefore vacate the order terminating the proceedings.

## II. ANALYSIS

Section 212(a)(6)(A)(i) of the Act provides that "[a]n alien who is present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." The respondent admitted the factual allegations supporting the charge that she is removable under this section of the Act. She also admitted on her TPS application that she entered without inspection. We conclude that the respondent is inadmissible and therefore subject to removal under section 212(a)(6)(A)(i) of the Act.

The Immigration Judge determined that the grant of TPS rendered the respondent admissible, or somehow eliminated the charge of inadmissibility, and, therefore, that she was not properly subject to removal proceedings. The Act does not provide for such a result. There is nothing in the language of the statute to indicate that a grant of TPS renders an alien admissible to the United States. According to section 244(c)(5) of the Act, "Nothing in this section shall be construed as authorizing an alien to apply for admission to, or to be admitted to, the United States in order to apply for temporary protected status under this section." Moreover, "[d]uring a period in which an alien is granted temporary protected status . . . the alien shall not be considered to be *permanently* residing in the United States under color of law." Section 244(f)(1) of the Act (emphasis added). Thus, a grant of TPS does not affect an alien's admissibility or inadmissibility for purposes of the Immigration and Nationality Act generally.

On the other hand, an alien's presence without admission, or inadmissibility based on that illegal presence, will not preclude a grant

---

[2] During the Immigration Judge's discussion of legal issues with the parties, the respondent withdrew from the joint request for administrative closure. On appeal, the respondent contends that the Immigration Judge properly terminated the proceedings but states that termination should have been without prejudice.

of TPS under most circumstances.  The Act permits TPS to be granted despite an alien's inadmissibility, but it requires a waiver of the grounds of inadmissibility in order to qualify for TPS.  With certain specified exceptions, "the Attorney General may waive [the provisions] of section 212(a) [of the Act]."  Section 244(c)(2)(A)(ii) of the Act; *see also* 8 C.F.R. § 1244.18(a) (2010).  Some grounds of inadmissibility that are not subject to waiver as a precondition of TPS involve criminal and terrorist activities. *See* section 244(c)(2)(A)(iii) of the Act.  Similarly, section 244(c)(2)(B) provides that an alien is ineligible for TPS if he or she has been convicted of any felony or two or more misdemeanors committed in the United States or is "described in section 208(b)(2)(A)" of the Act, 8 U.S.C. § 1158(b)(2)(A) (2006), which includes aliens who have been convicted of a particularly serious crime, have participated in the persecution of others, or are regarded as a danger to national security.  *See also* 8 C.F.R. § 1244.4 (2010).[3]

Because the respondent has been granted TPS, her inadmissibility has been waived for the specific purposes of the TPS statutory scheme.  However, the waiver is a limited one, the purpose of which is to permit certain aliens, such as the respondent, to remain in the United States with work authorization, but only for the period of time that TPS is effective.  *See* sections 244(a)(1), (2), (c)(5) of the Act; 8 C.F.R. § 1244.10(f)(3) (2010); *see also United States v. Flores*, 404 F.3d 320, 322-23, 327 (5th Cir. 2005); Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001).[4]  The waiver therefore only serves to temporarily protect the respondent from deportation or removal.

The Act specifically states that the Attorney General may grant "temporary protected status in the United States and shall not remove the alien from the United States *during the period* in which such status is in effect."  Section 244(a)(1)(A) of the Act (emphasis added).  Thus, the respondent is protected from execution of a removal order during the time her TPS status is valid, but she remains removable based on the charge of inadmissibility in the Notice to Appear.[5]

Our conclusion is based on the statutory language as a whole and is supported by the legislative history of TPS.  *See, e.g.*, *Matter of Avila-Perez*, 24 I&N Dec. 78, 83 (BIA 2007) (stating that when statutory language is unclear, we consider legislative history to help determine congressional

---

[3] We note that 8 C.F.R. § 1244.4(b) refers to section 243(h)(2) of the Act, which is no longer in effect.

[4] Aliens must periodically reregister to maintain their TPS status.  *See* section 244(c)(3)(C) of the Act.  In this case, the respondent was initially granted TPS for 18 months.

[5] If TPS was intended to waive removability, there would be no reason for provisions such as section 244(d)(4) of the Act, which prevents an alien who has been granted TPS from being detained "on the basis of the alien's immigration status."

intent).  In discussing the TPS statutory scheme, Congress stated that TPS "does *not* create an admissions program.  It is designed to protect individuals already in the United States and gives no alien any right to come te [sic] the United States."  H.R. Rep. No. 101-245, at 13 (1989), *reprinted in* 2 Igor I. Kavass & Bernard D. Reams, Jr., *The Immigration Act of 1990: A Legislative History of Pub. L. No. 101-649,* Doc. No. 17, at 13 (1997), *available at* http://www.heinonline.org/HOL/Index?collection=leghis (accompanying the Chinese Temporary Protected Status Act of 1989, H.R. 2929, 101st Cong. (1989)).[6]  "The legislation also makes clear that an individual need not relinquish any other immigration status the individual may have in order to receive TPS, nor [is the] conferral [of TPS] considered inconsistent with any other immigration status."  *Id.* at 14.

The TPS scheme was created to codify and standardize a type of deferral of deportation called "Extended Voluntary Departure" or "EVD," which had existed for decades to address humanitarian concerns.  *Id.* at 9 ("[E]very Administration since and including that of President Eisenhower has permitted one or more groups of otherwise deportable aliens to remain temporarily in the United States out of concern that the forced repatriation of these individuals could endanger their lives or safety.").  EVD was granted in the discretion of the Attorney General, upon the recommendation of the Secretary of State. *Id.* at 10.  It was premised upon the recognition that individuals fleeing life-threatening natural disasters, such as drought or famine, or "the existence of a generalized state of violence within a country" did not establish a basis for claiming persecution and were therefore not entitled to either asylum or withholding of removal.  *Id.* at 8.

However, EVD was considered an "ad hoc" approach.  *Id.*  Congress saw fit to replace it with a statute that would address the problems that were inherent in the program at the time, including the lack of transparency and the inability of the Government to effectuate the deportation of aliens when appropriate.  *Id.* at 12.  Thus, TPS was intended to allow aliens who are nationals of designated foreign states in certain humanitarian circumstances to remain in a lawful manner and not be forced to depart the United States during the period that TPS is effective.  Congress clearly did not intend

---

[6] The general TPS statutory scheme set forth in H.R. 2929, the Chinese Temporary Protected Status Act of 1989, was later enacted with similar language as part of the Immigration Act of 1990, Pub. L. No. 101-649, § 302, 104 Stat. 4978, 5030.  However, the specific designation of Chinese nationals as aliens eligible for TPS, which was proposed in H.R. 2929, was changed to designate nationals of El Salvador in the enacted legislation.  *Id.* § 303, 104 Stat. at 5036; *see also* H.R. Rep. No. 101-955, at 127 (1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.A.A.N. 6784, 6792, 1990 WL 201613 (discussing the treatment of certain nationals of El Salvador, China, and other countries by the Immigration Act of 1990).

for TPS to create a permanent immigration status in the United States. *See* section 244(f)(1) of the Act; *see also De Leon-Ochoa v. Att'y Gen. of U.S.*, 622 F.3d 341, 354 (3d Cir. 2010) (stating that TPS "is designed to temporarily prevent removal of aliens during extraordinary and temporary conditions that prevent safe return").

The Immigration Judge concluded, and the respondent has argued, that termination of the removal proceedings was appropriate, relying primarily on *United States v. Orellana*, 405 F.3d 360 (5th Cir. 2005). However, we agree with the DHS that *Orellana* involves a criminal matter that did not address the issue before us. Specifically, the issue in that case concerned 18 U.S.C. § 922(g)(5)(A), which criminalizes the possession of a firearm by aliens who are illegally or unlawfully present in the United States. *Id.* at 361-62.

The court's determination in *Orellana* that an alien in valid TPS status is not illegally in the United States, and thus was not properly convicted of this firearms offense, is consistent with the Act and the regulations, as well as the purpose of TPS as expressed in the legislative history. The court noted that a grant of TPS allows an alien to remain lawfully in the United States for a period of time and offers aliens certain benefits, such as the opportunity to be lawfully employed. According to the court, aliens granted TPS "are not part of an underground population of persons." *Id.* at 368. Thus, the court reasoned these individuals were not the segment of the population with which the criminal statute was concerned. *Id.* Accordingly, the holding in *Orellana* relates to the scope of 18 U.S.C. § 922(g)(5)(A) and not to the proper disposition of proceedings under the Act when an alien is granted TPS.

We agree with the court in *Orellana* that "TPS renders an alien's presence lawful." *Id.* at 364; *see also Okpa v. U.S. INS*, 266 F.3d 313, 315 (4th Cir. 2001) ("TPS allows an alien to remain in the United States legally. . . ."). However, as the name indicates, TPS only provides a temporary protection from removal. *Orellana* does not contradict our determination that, given the limitations of TPS, the respondent is properly in removal proceedings. Although the court noted that the alien's inadmissibility was implicitly waived, there is no discussion to refute the fact that such a waiver is a narrow one, limited to the humanitarian purposes of the TPS provisions of the Act. *United States v. Orellana*, 405 F.3d at 363 n.8. Moreover, the court explicitly stated that removal was precluded only "so long as the registration is in effect." *Id.* at 363-64. In fact, the court noted that the alien in that case "would 'revert' to his original illegal immigration status" once his TPS was no longer effective. *Id.* at 366. Nothing in the court's discussion convinces us that our determination is not the proper one for the administration of immigration proceedings.

We also are not persuaded by the respondent's reliance on *Matter of Rainford*, 20 I&N Dec. 598, 599-600 (BIA 1992), and its rejection of the

"futility doctrine." In that case, the Board harmonized the application of the Act in the context of adjustment of status, essentially to prevent the absurd result of an alien being eligible for adjustment and admitted, but then immediately becoming subject to deportation. *Id*; *see also Matter of Briones*, 24 I&N Dec. 355, 365 (BIA 2007) (discussing that any contrary interpretation of adjustment eligibility would render the statutory language of the Act so contradictory as to lead to an absurd result inconsistent with congressional intent (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190-91 (1991))). TPS is a protection, distinct from adjustment of status or other relief under the Act. *See* section 244(b)(5)(B) of the Act (providing that an alien placed in removal proceedings may assert *protection* under the TPS statute). Interpreting the effect of a grant of TPS as we do here is consistent with congressional intent. For these reasons, we conclude that termination of the respondent's removal proceedings was not proper. Accordingly, the appeal of the DHS will be sustained, the Immigration Judge's decision will be vacated, and the removal proceedings against the respondent will be reinstated. The record will be remanded to the Immigration Judge for further proceedings.

As noted previously, the parties in this case initially agreed to administrative closure, which "is used to temporarily remove a case from an Immigration Judge's calendar or from the Board's docket." *Matter of Gutierrez-Lopez*, 21 I&N Dec. 479, 480 (BIA 1996). This approach is consistent with the nature of TPS. On remand, if the respondent does not want the proceedings to continue, she may request that her case be administratively closed, which requires agreement of both parties. *Id.* However, if the respondent does not make such a request, or does not agree to administrative closure, the proceedings should continue, and the respondent should be provided an opportunity to apply for any relief for which she may be eligible. *See Matter of Quintero*, 18 I&N Dec. 348, 350 (BIA 1982). If the proceedings continue and the respondent does not apply, or is not eligible, for relief from removal, then an order of removal should be entered. *See* 8 C.F.R. § 1240.12 (2010). However, any such removal order could not be executed during the period in which the respondent's TPS status is valid. Section 244(a)(1)(A) of the Act.

**ORDER:** The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings against the respondent are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.