In the

# United States Court of Appeals

### For the Seventh Circuit

―――――――――――

No. 17-3377

ARJUN DHAKAL,

*Plaintiff-Appellant*,

*v.*

JEFFERSON B. SESSIONS III, Attorney
General of the United States, et al.,

*Defendants-Appellees*.

―――――――――――

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cv-00010-jdp — **James D. Peterson**, *Chief Judge*.

―――――――――――

ARGUED MAY 22, 2018 — DECIDED JULY 13, 2018

―――――――――――

Before FLAUM and RIPPLE, *Circuit Judges*, and GETTLEMAN,
*District Judge*.*

RIPPLE, *Circuit Judge*. Arjun Dhakal, a native and citizen of
Nepal, brought this action against the Attorney General and
other executive branch defendants under the Administrative

―――――――――――――――――

* The Honorable Robert W. Gettleman of the Northern District of Illinois,
sitting by designation.

Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. He asked the district court to review the decision of the Director of the Chicago Asylum Office, denying his application for asylum. The defendants moved to dismiss for lack of jurisdiction. They contended that Mr. Dhakal had not exhausted his administrative remedies and that the agency action is not final because the immigration courts have not yet passed upon his claim in removal proceedings. Mr. Dhakal remains in lawful status in the United States; he has not been placed in removal proceedings and is therefore unable to access the ordinary channel for further intra-agency review of his asylum application. In his view, because he has exhausted all administrative remedies presently available to him, his claim is ripe, and he can seek review in the district court.

The district court concluded that it lacked jurisdiction over his claim. Although we conclude that there is no jurisdictional bar, we agree with the Government that the decision Mr. Dhakal challenges is not a final agency action and, therefore, he is not entitled to relief under the APA. The statutory scheme for adjudication of asylum claims by the agency must be allowed to take its course. We therefore affirm the district court's judgment dismissing the case, but modify it to reflect that it is on the merits.

**I**

**A.**

According to his asylum application, Mr. Dhakal and his family were members of the Nepali Congress, a political party

that he describes as supporting nationalism, democracy, so-
cialism, and nonviolence.  From the mid-1990s through late
2006, the Maoist party emerged and began targeting its oppo-
sition, including the Nepali Congress. In 2006, the parties
signed a Comprehensive Peace Accord, but, without a mech-
anism for enforcement, the accord did not deter the Maoists.
They created a Young Communist League and began to take
more aggressive actions. Mr. Dhakal continued his opposition
work, including working with the United States Agency for
International Development and other international organiza-
tions for peace.

In 2012, he received a letter from the Maoists on official
letterhead. The letter instructed him to cease his activities. A
few weeks later, four men stopped him as he was riding home
on his motorbike. They verbally abused him and told him that
the Maoist party had sent them to break his leg. They hit him
with a bamboo cane and smashed his motorbike; they also
told him that if he did not cease his opposition work, "next
time, he will be finished."[1] A forest ranger discovered
Mr. Dhakal and transported him to the hospital. A local news-
paper reported the attack. Despite this incident, Mr. Dhakal
continued his activities, and in April 2013, he received an-
other letter threatening him and his family.

In May 2013, the University of Rhode Island invited
Mr. Dhakal to participate in a course in nonviolent conflict

_____

[1] R.1-12 at 3.

resolution because of his "impressive record of accomplish-ments and activism."[2] He accepted the invitation, which included a scholarship and travel expenses, and traveled to the United States in June 2013.

After he left Nepal, Maoists went to his home and threatened his wife, who subsequently fled to her parents' home with their children. Mr. Dhakal determined that he could not return to Nepal and therefore applied for asylum in the United States in August 2013, two months after his entry.

In April 2015, while Mr. Dhakal's asylum application remained pending, Nepal suffered a 7.8 magnitude earthquake. Based on the resulting conditions, the Secretary of Homeland Security designated Nepal for Temporary Protected Status ("TPS") for eighteen months.[3] Under that designation, eligible nationals of Nepal residing in the United States as of that date would not be removed from the United States and could receive employment authorization for the duration of the TPS designation. Mr. Dhakal applied for, and received, TPS. The Department of Homeland Security twice extended the designation, and Mr. Dhakal has remained in lawful status since his original application for TPS was granted. He eventually moved to Brookfield, Wisconsin, where he now manages a gas station.

In June 2016, after Mr. Dhakal received TPS, the asylum office of United States Citizenship and Immigration Services

---

[2] R.1-11.

[3] *See* 8 U.S.C. § 1254a(b); Designation of Nepal for Temporary Protected Status, 80 Fed. Reg. 36,346 (June 24, 2015).

interviewed him in connection with his application for asylum. In August, the Director of the Chicago Asylum Office issued a Notice of Intent to Deny the application.[4] Principally, the asylum officer found that Mr. Dhakal was not credible based on internal inconsistencies and a lack of detail in his responses. The officer also concluded that the two threatening letters and one beating did not rise to the level of past persecution and that Mr. Dhakal had not shown a reasonable possibility of future persecution. Mr. Dhakal submitted a rebuttal, but DHS was not persuaded. In September 2016, the Director issued a final denial. The final denial letter informed Mr. Dhakal that "[b]ecause you are maintaining valid … temporary protected (TPS) status, your asylum application will not be referred to an immigration judge for adjudication in removal proceedings before the U.S. Department of Justice, Executive Office for Immigration Review."[5]

**B.**

In January 2017, Mr. Dhakal brought this action in the United States District Court for the Western District of Wisconsin, seeking a declaratory judgment that the Director's denial of his asylum claim was contrary to law. The Government moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim, contending that Mr. Dhakal could not proceed in federal court without first exhausting his administrative remedies. After briefing by the parties, the district court granted the Government's motion.

---

[4] R.1-4.

[5] R.1-3 at 2.

In a brief opinion, the court held that Mr. Dhakal's suit was barred by *Kashani v. Nelson*, 793 F.2d 818 (7th Cir. 1986). There, we dismissed a claim brought by an alien who also challenged an initial denial of his asylum application. We held that he was required to pursue administrative remedies. The district court acknowledged that Mr. Dhakal had no further remedies available to him at the time of his action because the Department of Homeland Security had not placed him in removal proceedings and those proceedings were the sole means within the executive branch for review of an adverse asylum decision. The court was sympathetic to Mr. Dhakal's circumstances and further noted that a later case, *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002), could be read to undermine *Kashani*'s holding. It nevertheless concluded that *Kashani* still appeared to govern. Mr. Dhakal unsuccessfully moved for reconsideration and now appeals.

Subsequent to the filing of briefs in the appeal, the current Secretary of Homeland Security announced the end of TPS for citizens of Nepal, effective June 24, 2019.[6]

---

[6] *See* Dep't of Homeland Security, *Secretary Kirstjen M. Nielsen Announcement on Temporary Protected Status for Nepal* (Apr. 26, 2018), https://www.dhs.gov/news/2018/04/26/secretary-kirstjen-m-nielsen-announcement-temporary-protected-status-nepal.

The Government brought the end of TPS for Nepal to our attention in a 28(j) letter. It stated:

> This development regarding Mr. Dhakal's TPS does not substantially alter the arguments and issues before this Court. Mr. Dhakal's suit is still premature given the other administrative remedies he may pursue. As was true in *Massignani v.*

**II**

**DISCUSSION**

We review de novo the district court's order dismissing this case for lack of jurisdiction. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). We "may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Before we consider the applicability of the APA and the narrow question now before the court, we pause to place the issue in its proper statutory context.

**A.**

Mr. Dhakal's case implicates two separate legislative protections in our Nation's immigration laws. Each one protects a separate group of vulnerable aliens from involuntary return to their country of nationality. We begin with a description of each of these forms of protection and the processes by which they are obtained.

The first is asylum, which provides a right to remain in the United States to certain individuals who meet the definition

---

*INS*, 438 F.2d 1276 (7th Cir. 1971) (per curiam), *Kashani v. Nelson*, 793 F.2d 818 (7th Cir. 1986), and *McBrearty v. Perryman*, 212 F.3d 985 (7th Cir. 2000), Mr. Dhakal can still obtain the relief he seeks—asylum—during whatever removal proceedings may be brought against him after his TPS expires.

App. R. 39 at 2.

of a refugee. 8 U.S.C. § 1158(b)(1)(A). That definition, borrowed from international law, includes, generally, a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his] country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). A person physically present in the United States, and not in removal proceedings, may apply affirmatively for asylum to the Department of Homeland Security, and the Department's Asylum Office will have initial jurisdiction over the application. 8 C.F.R. § 208.2(a). If the officer determines that the alien has carried the burden of proof to establish eligibility for asylum and that he merits a favorable exercise of discretion, the officer may grant the application. *Id.* § 208.14(b). If the officer does not grant asylum, the officer's next step depends on whether the alien is presently removable from the United States. If the alien is inadmissible or deportable, the officer "shall refer the application to an immigration judge … for adjudication in removal proceedings." *Id.* § 208.14(c)(1). However, if the alien is "maintaining valid immigrant, nonimmigrant, or Temporary Protected Status at the time the application is decided, the asylum officer shall deny the application for asylum" without taking further action to seek the removal of the unsuccessful applicant. *Id.* § 208.14(c)(2).

Once in removal proceedings, the application for asylum will be adjudicated by the immigration judge, now as a defense to removal. *See id.* § 208.2(b). An unsuccessful applicant can appeal to the Board of Immigration Appeals, *id.* § 1003.38(a), and there are various opportunities to request reopening or reconsideration before the immigration judge and

the Board, *id.* §§ 1003.23 (immigration judge), 1003.2 (Board). If the agency determines, after the conclusion of removal proceedings, that the alien's application for asylum will not be granted, the alien may petition for review of the Board's decision in the appropriate court of appeals. 8 U.S.C. § 1252(a)(5).

A grant of asylum at either the affirmative or defensive stage is for an indefinite period. 8 C.F.R. § 208.14(e). An asylee may petition for his spouse and children to obtain similar relief. *Id.* § 208.21. Moreover, asylum status opens a pathway to legal permanent residency and eventually to citizenship. *Id.* § 209.2.

The other form of protection relevant to the present appeal is TPS. TPS protects nationals of countries that are in a present state of armed conflict or that are experiencing a disruption in living conditions as a result of a natural or environmental disaster. 8 U.S.C. § 1254a(b). When the Department of Homeland Security determines that such an emergency has occurred in a foreign country, it may designate that country for TPS. *Id.* The initial designation of TPS is valid for between six and eighteen months, as determined by the Department, and extensions may be authorized for additional six-to-eighteen-month periods. *Id.* § 1254a(b)(2), (b)(3)(C). Unlike asylum, which requires the alien to make a highly personalized showing of a likelihood of danger upon return, TPS is premised on the widespread nature of the emergency situation in the foreign country, and therefore is available to virtually all of its nationals in the United States on the date of the designation.[7]

---

[7] The statute includes narrow grounds of ineligibility for aliens convicted of a felony or two or more misdemeanors committed in the United States,

TPS protects its recipients from removal only while the designation is valid; it affords no pathway to family reunification, permanent residency, or citizenship. Furthermore, the agency views aliens in TPS as remaining subject, as a general matter, to removal proceedings. *Matter of Sosa Ventura*, 25 I. & N. Dec. 391, 393 (BIA 2010) (holding that an alien in TPS "is protected from execution of a removal order during the time her TPS status is valid, but she remains removable based on the charge of inadmissibility in the Notice to Appear").[8] An alien may apply for TPS affirmatively, and, if unsuccessful, may renew his request in removal proceedings. 8 U.S.C. § 1254a(b)(5); *Matter of Lopez-Aldana*, 25 I. & N. Dec. 49, 51 (BIA 2009).

---

or for aliens who present other security risks. *See* 8 U.S.C. § 1254a(c)(2)(B); *see also id.* § 1158(b)(2)(A).

[8] In *Matter of Sosa Ventura*, 25 I. & N. Dec. 391 (BIA 2010), the Board considered the case of an alien who was in removal proceedings at the time that the agency granted her application for TPS. The Board held that the immigration judge's termination of removal proceedings on the basis of a grant of TPS was improper. The preferred course for such an alien against whom removal proceedings already had been commenced, the Board held, was either to close administratively proceedings on the agreement of the parties, or, if the parties do not agree, to allow the proceedings to reach a conclusion as to the alien's admissibility or removability, although any resulting "removal order could not be executed during the period in which the [alien's] TPS status is valid." *Id.* at 396.

The Board's decision in *Matter of Sosa Ventura* predated the recent decision by the Attorney General that immigration judges generally lack the power to close administratively removal proceedings. *See Matter of Castro-Tum*, 27 I. & N. Dec. 271, 272 (A.G. 2018). This case presents us with no occasion to comment on the merits of *Matter of Castro-Tum*.

With this understanding of the two separate protective mechanisms of immigration law involved in Mr. Dhakal's case, we now proceed to his claim that the district court may review the administrative denial of his asylum claim.

**B.**

The most common route for federal court review of immigration decisions is not under the APA, but on petition for review of a final order of removal in the appropriate court of appeals. *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter … ."); *Ardestani v. INS*, 502 U.S. 129, 133 (1991) ("Congress intended the provisions of the Immigration and Nationality Act of 1952 (INA), 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq.*, to supplant the APA in immigration proceedings."). Mr. Dhakal is not subject to a final order of removal and therefore cannot avail himself of the ordinary process for obtaining federal court review set forth in the immigration statute. He therefore attempts to proceed under the APA, which provides in relevant part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

The district court dismissed the action under Federal Rule of Civil Procedure 12(b)(1), finding that it lacked subject matter jurisdiction over the claim. We disagree. Although the APA is not an independent grant of jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 105 (1977), where federal jurisdiction is

not precluded by another statute, general federal question jurisdiction exists under 28 U.S.C. § 1331. *See id.* at 105, 109. The Government has not argued to us that any statute precludes jurisdiction over this claim, and neither do we so conclude. *Accord Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014) (finding federal question jurisdiction over an APA claim regarding administrative denials of immigration benefits).[9]

Because the district court had jurisdiction to consider the claim, we proceed to the alternative grounds for dismissal asserted by the Government.

---

[9] The district court's resolution of the case was based on its reading of several of our cases that had required exhaustion of administrative remedies for similar claims and that appeared to treat exhaustion as a jurisdictional requirement. *See, e.g.*, *Kashani v. Nelson*, 793 F.3d 818, 822 (7th Cir. 1986). We note that these cases predated the Supreme Court's recent efforts "to 'bring some discipline' to the use of the term 'jurisdictional.'" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). Consistent with that instruction, we have been more careful "to distinguish between the court's power to adjudicate the [matter] and the court's authority to grant relief." *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386 (7th Cir. 2003). Applying that practice here, we agree with our colleagues on the Sixth Circuit that "[b]ecause the APA is not a jurisdiction-conferring statute, [the] elements of a claim under the APA," including exhaustion, "are not jurisdictional." *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 424 (6th Cir. 2016) (internal quotation marks omitted) (second alteration in original). Consequently, we need not address exhaustion. This case is better analyzed under the related but "conceptually distinct" concept of finality. *See Darby v. Cisneros*, 509 U.S. 137, 144 (1993); *see also infra* II.C.

## C.

The Government contends that Mr. Dhakal's case should be dismissed because his challenge is to a nonfinal agency decision and therefore is not reviewable under the APA. "Where, as here, the actions of the agency are not made reviewable by a specific statute, the APA allows judicial review of the actions by federal agencies only over 'final agency action for which there is no other adequate remedy in a court.'" *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003) (quoting 5 U.S.C. § 704; *Abbs v. Sullivan*, 963 F.2d 918, 925–26 (7th Cir. 1992)).

Finality is, therefore, a necessary precondition to our ability to review agency action under the APA.

> As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted) (internal quotation marks omitted). Courts have interpreted the finality requirement of the APA in a "flexible" and "pragmatic way." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 150 (1967), *abrogated in part on other grounds by Califano*, 430 U.S. at 105. "An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.' The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will

directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (citation omitted) (quoting *Abbott Labs.*, 387 U.S. at 149).

We begin with the first question: whether the decision of the Director of the Chicago Asylum Office marks the consummation of the agency's decisionmaking process. We conclude that it does not. *Kashani* persuasively analyzed the statutory and regulatory scheme for administrative review of asylum claims and concluded that the executive branch process for review of asylum claims is carefully crafted and detailed. *See generally Kashani v. Nelson*, 793 F.2d 818 (7th Cir. 1986). Although, as Mr. Dhakal notes, there have been significant structural changes to the agencies involved and to the process, the basic thrust of review of asylum claims remains the same. Congress created a "systematic scheme" for processing asylum claims that was motivated by "a desire to revise and regularize the procedures governing the admission of refugees … [and] to eliminate the piecemeal approach." *Id.* at 825 (second alteration in original) (emphasis removed) (quoting *INS v. Stevic*, 467 U.S. 407, 425 (1984)).

An alien need not pursue an affirmative asylum process, as Mr. Dhakal did. Once the Department seeks removal and asylum is asserted as a defense, the immigration court "develops the more extensive factual record" for review by the Board and, where appropriate, our ultimate review. *Id.* at 826. The process recognizes that immigration judges and the Board possess expertise in these matters and thus "should be given the first chance," before the federal courts, "to apply that expertise." *Id.* (quoting *McKart v. United States*, 395 U.S. 185, 194 (1969)). Moreover, if Mr. Dhakal is denied asylum *at the conclusion of this process* by the immigration courts, only the

decision of the Board, which speaks with final authority for the executive branch, forms the basis for our review. The Director's decision is, in that respect, "more like a tentative recommendation than a final and binding determination," or "the ruling of a subordinate official" when viewed in light of the intended, complete administrative process. *Franklin*, 505 U.S. at 798 (quoting *Abbott Labs.*, 387 U.S. at 151).

We conclude that the executive branch simply has not completed its review of Mr. Dhakal's claims and consequently has not made a final decision regarding his immigration status and eligibility for asylum.[10] *See Jama*, 760 F.3d at 496 ("Congress has delegated to specific government agencies the task of enforcing immigration laws and determining aliens' immigration statuses. The agencies' decisionmaking process consummates when they issue a final decision regarding an alien's immigration status. … [T]he operative question in this case for purposes of the APA is whether there is a final decision on Jama's *immigration status*." (emphasis in original)).

We also conclude that the decision is not one from which "legal consequences will flow." *Bennett*, 520 U.S. at 178. That

---

[10] Mr. Dhakal responds that the *agency*, meaning the Department of Homeland Security, has reached a final decision, because removal proceedings are conducted by the Executive Office for Immigration Review in the Department of Justice. That is, although there is further executive branch review, there is no intra-agency review; the Department of Homeland Security has completed its review of his asylum claim. It is a novel, but ultimately unconvincing, argument. Although the structure of the proceedings span two agencies in two cabinet departments, Congress clearly intended to consolidate and channel appeals through a single administrative process.

is, its effect on Mr. Dhakal is to keep in place the status quo *for the time being*. "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue *that inflicts an actual, concrete injury … .*" *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985) (emphasis added). We recognize that, were Mr. Dhakal placed in removal proceedings while his TPS was valid, and were he successful in those proceedings in proving his asylum claim, he would obtain benefits beyond those afforded by his temporary status. Specifically, he would obtain long-term certainty as to his status, a path toward legal permanent residency and citizenship, and the ability to apply for his immediate family to join him in the United States. The lack of a present opportunity to seek such additional benefits is no doubt a hardship to Mr. Dhakal, but the decision he seeks to have reviewed *merely delays* his ability *to pursue* those ancillary benefits of asylum; it does not definitively deny them. Moreover, the present denial does not immediately affect his ability to remain in the United States.

Because the agency's decision on Mr. Dhakal's asylum claim is not a final agency action within the meaning of the APA, the district court properly dismissed the case. The agency's decision to delay further review by not bringing removal proceedings against Mr. Dhakal is a practical decision of governing, and it serves important purposes. It allows aliens such as Mr. Dhakal time to build a stronger asylum claim, by providing him with additional time to acquire supporting documents when country conditions render that task difficult, if not impossible. It also affords Mr. Dhakal time to develop any other potential avenues for immigration relief as defenses to removal, should he eventually face such proceedings. It allows the agency to review his claim at a time closer

to his potential removal, when country conditions underlying the grant of TPS may be altered in a way material to his claim. It promotes efficiency in that should Mr. Dhakal's TPS to be extended or should he obtain another form of lawful status, the agency would not expend its resources on initiating and prosecuting its case to obtain what might be an inconsequential removal order. Equally importantly, it prioritizes the cases for removal where aliens have no other right to the protection of the United States and must assert asylum as a defense to otherwise imminent removal.[11]

Moreover, TPS is not mandatory for eligible aliens. Mr. Dhakal sought and received this status, which has the enormous benefit of protecting him temporarily from removal. It also, however, carries the consequence of this holding period, which slows but does not remove his access to intra-agency review. Mr. Dhakal was not required to obtain or renew this status and its attendant benefits and drawbacks.

---

[11] The decision of the agency not to place in removal proceedings unsuccessful asylum applicants who hold valid TPS, 8 C.F.R. § 208.14(c)(2), is essentially a blanket stay, or an exercise of prosecutorial discretion. As such, it would not be subject to our review. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."). Mr. Dhakal has not challenged that regulation, or its exercise in his case, nor has he alleged the kind of "pattern and practice" violation of aliens' statutory rights discussed in *Kashani*, 793 F.2d at 822. Instead, he has sought to have the merits of his individual asylum denial itself reviewed directly under the APA.

**Conclusion**

The decision of the Director of the Chicago Asylum Office that forms the basis for Mr. Dhakal's complaint is not a final agency action for purposes of the APA. We therefore affirm the judgment of the district court dismissing Mr. Dhakal's complaint, modifying it to reflect that the decision is on the merits rather than jurisdictional.

AFFIRMED