**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE CRISTOBAL CRUZ PLEITEZ, *Petitioner*, | No. 15-72876 |
| v. | Agency No. A074-803-846 |
| WILLIAM P. BARR, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 14, 2019[*]
Pasadena, California

Filed September 18, 2019

Before: Mary M. Schroeder and Susan P. Graber, Circuit
Judges, and Michael H. Watson,[**] District Judge.

Opinion by Judge Graber

---

[*] The panel unanimously concludes that this case is suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

[**] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

## SUMMARY[***]

### Immigration

Denying Fernando Jose Cristobal Cruz Pleitez' petition for review of a decision of the Board of Immigration Appeals denying his motion to reopen his 1996 in absentia deportation order, the panel held that the notice Petitioner received of his hearing comported with regulatory requirements and due process, and rejected his argument that he did not receive proper notice because he was 16 years old at the time he was served and no adult was served with the Order to Show Cause and Notice of Hearing ("OSC").

Petitioner entered the United States without inspection at the age of 10 and affirmatively applied for asylum in 1996 when he was 16 years old. An asylum officer referred his case to immigration court, and the former Immigration and Naturalization Service ("INS") served him with an OSC providing the date, time, and location of his deportation hearing. The OSC was sent by certified mail and included a return receipt, which Petitioner signed. When Petitioner did not appear for his hearing, an immigration judge ordered him deported in absentia.

In 2014, Petitioner filed a motion to reopen, arguing that notice to him only, without notice to a responsible adult, violated his rights. The immigration judge denied Petitioner's motion, and the BIA dismissed his appeal.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

At the relevant time, a regulation provided that notice to a minor under 14 years of age had to be made on a person with whom the minor resided, but no statute or regulation established a special method of serving a minor older than 14. However, in *Flores-Chavez v. Ashcroft*, 362 F.3d 1150 (9th Cir. 2004), this court held that, when a minor was detained for illegally entering the United States and then released into the custody of an adult relative, the only reasonable interpretation of the regulations at issue required that INS serve notice to both the juvenile and to the person to whom the regulation authorized release.

The panel held that *Flores-Chavez* does not extend to situations in which a minor over the age of 14 was never detained or released to an adult by the INS and in which he initiated proceedings by filing an affirmative request for relief. The panel explained that Flores-Chavez' circumstances and Petitioner's circumstances differed significantly: Petitioner was not detained, filed an affirmative application for asylum and was 16 years old when served his OSC, whereas Flores-Chavez was detained and released into the care of a responsible adult and was 15 when he was served his OSC. The panel also noted that the relevant regulations differed, too, because Petitioner was not detained.

Applying the test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the panel further concluded that the notice Petitioner received comported with due process. Balancing all the factors, the panel explained that the burden on the government of providing notice to a responsible adult living with a juvenile over the age of 14 outweighed the interest of never-detained minors over the age of 14, at least those who had filed an affirmative request for relief.

## COUNSEL

Frank E. Ronzio, Ronzio & Associates, Los Angeles, California, for Petitioner.

Virginia L. Gordon, Trial Attorney; Terri J. Scadron, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

GRABER, Circuit Judge:

Petitioner Jose Cristobal Cruz Pleitez, a native and citizen of El Salvador, seeks review of the Board of Immigration Appeals' ("BIA") decision denying his 2014 motion to reopen. Petitioner arrived in the United States in 1990. He affirmatively applied for asylum in 1996 and was served with an Order to Show Cause and Notice of Hearing ("OSC"), but he failed to appear at his hearing. An immigration judge ("IJ") ordered Petitioner deported in absentia. As relevant here, Petitioner argues that he did not receive proper notice of the hearing because he was 16 years old in 1996 and no adult was served with the OSC. We hold that the notice given here comported with both regulatory requirements and due process.[1] Accordingly, we deny the petition for review.

---

[1] We resolve additional issues in a memorandum disposition filed this date.

FACTUAL AND PROCEDURAL HISTORY

In 1990, at the age of 10, Petitioner entered the United States without inspection. In 1996, he affirmatively sought asylum. An asylum officer interviewed Petitioner and referred his case to immigration court.

The former Immigration and Naturalization Service ("INS") served Petitioner, who was 16 years old at the time, with an OSC, which provided the date, time, and location of deportation proceedings. The OSC was sent by certified mail and included a return receipt, which Petitioner signed on July 25, 1996.

But Petitioner did not appear for his deportation proceeding and, on October 15, 1996, an IJ ordered him deported in absentia. In 2014, Petitioner filed a motion to reopen, seeking to rescind the deportation order. In his motion, Petitioner raised several issues, including a claim that notice to him only, without notice to a responsible adult, violated his rights under the principles announced in *Flores-Chavez v. Ashcroft*, 362 F.3d 1150 (9th Cir. 2004). There, we held that, when a minor is detained for illegally entering the United States and then released into the custody of an adult relative, "the only reasonable interpretation of the regulations at issue requires that the [INS] serve notice to both the 'juvenile' . . . and to the person to whom the regulation authorizes release." *Id.* at 1153.

The IJ denied Petitioner's motion. Petitioner timely appealed to the BIA, which dismissed the appeal. As relevant here, the BIA ruled that *Flores-Chavez* does not control because Petitioner, unlike Flores-Chavez, presented no evidence showing that he had ever been detained and then

released by INS into the custody of a responsible adult. Petitioner timely seeks our review.

## STANDARDS OF REVIEW

When "the BIA conducts its own review of the evidence and law, rather than adopting the IJ's decision, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Zumel v. Lynch*, 803 F.3d 463, 471 (9th Cir. 2015) (internal quotation marks omitted). We review the denial of a motion to reopen for abuse of discretion. *Salim v. Lynch*, 831 F.3d 1133, 1137 (9th Cir. 2016). "The BIA abuses its discretion when its decision is arbitrary, irrational, or contrary to law." *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016) (internal quotation marks omitted). But we review de novo due process claims. *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012).

## DISCUSSION

Former 8 U.S.C. § 1252b(c)(3)[2] provided that an in absentia deportation order

> may be rescinded only—
>
> (A) upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2) of this section), or

---

[2] The INA provision relating to removal proceedings conducted in absentia is now located at 8 U.S.C. § 1229a(b)(5).

(B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) of this section or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien.

Petitioner did not file his motion to reopen within 180 days after the IJ ordered him deported in absentia, so he is not eligible for relief under subparagraph (A). To determine whether Petitioner is eligible for relief under subparagraph (B), we must decide whether he received notice in accordance with § 1252b(a)(2):[3]

In deportation proceedings under section 1252 of this title—

(A) written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any), in the order to show cause or otherwise, of—

(i) the time and place at which the proceedings will be held, and

(ii) the consequences under subsection (c) of this section of the failure, except under

---

[3] Petitioner was not in federal or state custody at the time of notice and, therefore, does not meet the requirements of the second method to reopen under § 1252b(c)(3)(B).

exceptional circumstances, to appear at such
proceedings . . . .

As noted, Petitioner argues that, because he was 16 years
old when he signed the return receipt on the OSC, he received
insufficient notice. Section 1252b(a)(2) does not specify
how a minor receives notice, but former 8 C.F.R.
§ 103.5a(c)(2)(ii)[4] provided that,

in the case of a minor under 14 years of age,
service shall be made upon the person with
whom the . . . minor resides; whenever
possible, service shall also be made on the
near relative, guardian, committee, or friend.

No statute or regulation specifically establishes a special
method for serving a minor who is *older* than 14.[5] Petitioner
was over 14 years of age when he was served with the OSC.
If § 103.5a controls, then the service of the OSC on Petitioner
was proper under the then-extant statutes and regulations.

Petitioner counters that service was inadequate under
*Flores-Chavez*. In *Flores-Chavez*, we analyzed the
regulatory framework governing notice to alien minors,

---

[4] The subsections in § 103.8 of the current Code of Federal
Regulations match those in former § 103.5a. *Compare* 8 C.F.R. § 103.5a
(1997) *with* 8 C.F.R. § 103.8 (2017). *See also* Immigration Benefits
Business Transformation, 76 Fed. Reg. 53,764-01 (Aug. 29, 2011).

[5] As noted in *Flores-Chavez*, 362 F.3d at 1158–59, 1158 & n.5, the
terms "minor" and "juvenile" are used inconsistently and sometimes
interchangeably in the INS regulations. We use the terms "minor" and
"juvenile" in this opinion to refer to any person under the age of 18.

specifically former 8 C.F.R. § 242.24.[6] 362 F.3d at 1156–57. Flores-Chavez was 15 years old when the INS served him with an OSC. *Id.* at 1153–54. He had been apprehended by the INS after crossing the border and had been released into the care and responsibility of an adult relative. *Id.* at 1154. The adult relative did not receive the OSC. *Id.* Flores-Chavez was ordered deported in absentia. *Id.* Seven years later, Flores-Chavez moved to reopen his deportation proceedings and to rescind the deportation order for lack of notice. *Id.* We held that, although the INS had provided Flores-Chavez with the notice required by § 1252b, as an alien minor *in INS custody*, Flores-Chavez was entitled to additional notice. *Id.* at 1156.

First, the *Flores-Chavez* court examined § 242.24, INS's juvenile detention and release regulation, which defines juveniles as "alien[s] under the age of eighteen (18) years." 8 C.F.R. § 242.24(a), (b)(1) (1997). That regulation also provides that a responsible adult assumes both custody and responsibility for a juvenile who is released into that adult's care. "The fair implication of § 242.24 as a whole is that *any* adult to whom an alien juvenile is released is charged with the dual responsibilities of caring for the juvenile and ensuring that the juvenile keeps his obligations to the court." *Flores-Chavez*, 362 F.3d at 1156. Because § 242.24 "assumes that a juvenile over fourteen is not competent to assure his presence at the hearing, the INS's service of the

---

[6] The subsections in § 236.3 of the current Code of Federal Regulations match those in former § 242.24. *Compare* 8 C.F.R. § 242.24 (1997) *with* 8 C.F.R. § 236.3 (2017). *See also* Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10,312-01 (Mar. 6, 1997); Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 83 Fed. Reg. 45,486-01 (Sept. 7, 2018).

time and place of the proceedings on only [Flores-Chavez] himself and not on the adult who took custody of him deprived [Flores-Chavez] of the *effective* notice to which he was legally entitled under § [1252b(a)(2)]." *Id.* at 1157.

Second, the court considered 8 C.F.R. § 103.5a, which generally governs the requirements for service of notice on aliens. Relevant to this case, § 103.5a(c)(2)(ii) requires service "upon the person with whom the . . . minor [under 14 years of age] resides." *Flores-Chavez* reasoned that its reading of § 242.24 does not conflict with the requirements of service detailed in § 103.5a, noting that § 103.5a does not "purport to address the issue of notice to juveniles *in custody who are released to an adult* for an appearance at a future hearing." 362 F.3d at 1158 (emphasis added).

Flores-Chavez' circumstances and Petitioner's circumstances differ significantly. Petitioner was not detained. And he filed an affirmative application for asylum. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 767 (9th Cir. 2018) (citing *Dhakal v. Sessions*, 895 F.3d 532, 536–37 (7th Cir. 2018), for its description of the affirmative asylum process); *Dhakal*, 895 F.3d at 536 ("A person physically present in the United States, and not in removal proceedings, may apply affirmatively for asylum . . . ."). The application stated that Petitioner was not in exclusion or deportation proceedings, that he had been in the United States for more than 5 years, and that he had lived for the last 5 years at a private residence in California. Additionally, Petitioner was 16 at the time he was served with notice.

The relevant regulations differ, too, because Petitioner was not detained. Thus the question before us is whether *Flores-Chavez* extends to situations in which a minor over the

age of 14 was never detained or released to an adult by the INS and in which he initiated proceedings by filing an affirmative request for relief. We conclude that the answer is "no."

In addition to resting on an interpretation of the relevant statutes and regulations, *Flores-Chavez* concluded that due process concerns would arise if the notice in that case were deemed sufficient. *Id.* at 1160–62. The due process analysis, like the regulatory analysis, differs significantly here.

Because "[t]he private liberty interests involved in deportation proceedings are indisputably substantial," *Dillingham v. INS*, 267 F.3d 996, 1010 (9th Cir. 2001), alien minors "in deportation proceedings are entitled to the fifth amendment guaranty of due process," *Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000) (internal quotation marks omitted). And "parental notification requirements, such as those established in 8 C.F.R. § 103.5a, further implicate the due process rights of juveniles, as minors generally cannot appreciate or navigate the rules of or rights surrounding final proceedings that significantly impact their liberty interests." *Flores-Chavez*, 362 F.3d at 1160 (citing *In re Gault*, 387 U.S. 1, 33–34 (1967)).

Accordingly, we must (as we did in *Flores-Chavez*) apply the test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to analyze whether the regulatory framework provides constitutionally sufficient notice in the present circumstances. We must consider,

> [f]irst, the private interest that will be affected
> by the official action; second, the risk of an
> erroneous deprivation of such interest through

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  Under *Mathews*, we then balance the affected interests to assess "whether the administrative procedures provided here are constitutionally sufficient."  *Id.* at 334.

First, we examine the affected interest of the individual. As stated in *Flores-Chavez*,

the private interest in receiving notice of pending deportation proceedings is one of grave importance.  For over one hundred years, our courts have held that aliens possess due process rights under the Fifth Amendment.  *See Yamataya v. Fisher*, 189 U.S. 86 (1903).  An alien facing deportation confronts the loss of a significant liberty interest, as deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945); *Dillingham*, 267 F.3d at 1010.

*Flores-Chavez*, 362 F.3d at 1161.  This factor clearly weighs in favor of Petitioner.

Second, we examine the risk of error and probable value of additional safeguards. We wrote in *Flores-Chavez* that "the regulatory and statutory framework makes clear [that] juveniles require the assistance of a responsible adult to navigate the deportation process." *Id.* at 1161. We also noted that "[t]he regulatory framework which includes 8 C.F.R. § 242.24 contemplates that no minor alien under the age of eighteen should be presumed responsible for understanding his rights and responsibilities in preparing for and appearing at final immigration proceedings." *Id.* at 1157. The immigration laws are complex, and our precedents recognize that minors face a substantial risk of error in navigating the system.

Nonetheless, the calculation differs here, and not just because Petitioner is slightly older than Flores-Chavez was. Petitioner himself set in motion the procedures leading to his hearing by filing an affirmative asylum application and by appearing before an asylum officer. These facts suggest that the risk of error in Petitioner's situation is less than the risk of error in Flores-Chavez' situation.

More importantly, no adult ever entered an agreement with the government to assume responsibility for Petitioner. It is unclear with whom Petitioner lived at the time of his deportation hearing, including whether anyone at his residence was over the age of 18. It is equally unclear that notice to an adult living at his residence (if there was one) would have added any safeguards to the process, because we cannot know whether that adult would have been willing to take the kind of responsibility that was statutorily assigned in *Flores-Chavez*. Without researching the details of every minor's situation, it is impossible to know whether a particular minor over the age of 14 resides with an adult and,

if so, whether serving the OSC on that adult will be any more effective in ensuring the minor's attendance at the hearing than serving notice on the minor.

Third, we examine the governmental interest and potential burden. We have observed that "it is to the INS's great benefit to have as many juveniles as possible attend their hearings, thus avoiding the expenditures of time and money in locating those ordered deported *in absentia*." *Flores-Chavez*, 362 F.3d at 1162. Nonetheless, requiring the government to provide notice to a responsible adult living with a never-detained juvenile over the age of 14 assumes that there is such a person and that the person can be identified.

In *Flores-Chavez*, we reasoned that "the incidental burden incurred by the INS is minimal when compared both with the minor's interests in understanding his rights and responsibilities and in appearing at his immigration proceedings, and with the likely effectiveness of proper notice to the responsible adult in achieving those ends." *Id.* In sharp contrast, here the burden on the government would be substantial. Unlike in *Flores-Chavez*, at the time the government serves a never-detained minor over the age of 14—particularly one who has affirmatively applied for asylum—with an OSC, it likely never interacted with that minor's adult relative or guardian. *Cf.* at 1161–62 (noting that "[t]he agency could provide the notice when the adult arrives to take custody of the minor and could read it simultaneously to the minor and the adult"). Research would be required to determine who lives with the minor, what their relationships to the minor are, and what, if any, responsibility they might have (or be willing and able to undertake) to ensure that the minor appears for immigration proceedings.

Such a process necessarily would involve material "fiscal and administrative burdens." *Mathews*, 424 U.S. at 335.

Balancing all the factors, the burden on the government outweighs the interest of never-detained minors over the age of 14, at least those who have filed an affirmative request for relief. The BIA did not violate due process, and Petitioner's notice was sufficient.

**Petition DENIED.**