In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 25-1207

ANUSHKA DUBEY, *et al.*,

*Plaintiffs-Appellants,*

*v.*

DEPARTMENT OF HOMELAND SECURITY,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 24 C 5286 — **Matthew F. Kennelly**, *Judge*.

---

ARGUED SEPTEMBER 11, 2025 — DECIDED SEPTEMBER 26, 2025

---

Before EASTERBROOK, HAMILTON, and MALDONADO, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Five citizens of India, who came to the United States as students with F-1 visas, returned home for short periods and sought reentry. Officials at the airports where they arrived revoked their visas. The officials ordered expedited removal with respect to four of the five; the fifth was allowed to withdraw his application for entry. All five returned to India. From there they filed this suit under

the Administrative Procedure Act, 5 U.S.C. §§ 556(d), 702, 704, seeking to contest decisions that preceded the actions at the airports.

Plaintiffs completed their courses of studies, but F-1 visa holders may remain in the United States to participate in "optional practical training" (OPT) programs. Each plaintiff signed up for such a program, and they depict themselves as victims of fraud. Plaintiffs allege that the providers with which they enrolled did not furnish either training or work and eventually ghosted them. Immigration officials appear to believe, however, that the plaintiffs were the wrongdoers or at least should have known that it is improper to pay for phantom work-study programs. We say "appear" because the complaint does not attach copies of the administrative decisions, and the suit was dismissed on the pleadings under Fed. R. Civ. P. 12(b)(1). Plaintiffs imply that they did not receive copies of the decisions—indeed, that they never received notice that any administrative process was under way and did not have a chance to explain their positions. Because this suit did not reach discovery, and the Department did not file the administrative records, these and other details remain unknown. We accept plaintiffs' allegations for current purposes.

Relying on 8 U.S.C. §1252(a)(2)(A)(i), the district court dismissed the suit for lack of subject-matter jurisdiction. 2025 U.S. Dist. LEXIS 18685 (N.D. Ill. Feb. 3, 2025). This statute forecloses judicial review of almost "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title". (We say "almost" because §1252(e) provides exceptions, but plaintiffs do not rely on any of these.) The orders entered at the airports

were authorized by §1225(b)(1), which led the district court to conclude that it lacks jurisdiction.

Plaintiffs insist that they are not challenging expedited removal orders issued under §1225(b)(1). Instead, they say, they contest the antecedent findings that they misused the "optional practical training" program. Those findings led to the revocation of their visas, which led to the removal orders. Plaintiffs contend that, by limiting their challenge to the findings, they avoid the effect of §1252(a)(2)(A)(i).

As the district court observed, this court has already rejected a functionally identical argument. See *Odei v. Department of Homeland Security*, 937 F.3d 1092 (7th Cir. 2019). As far as we can tell, no other circuit has agreed with the sort of argument that plaintiffs present. The reason is simple. Every order of removal under §1225(b)(1) has a justification. If an alien could avoid §1252(a)(2)(A)(i) by attacking that justification, the statute might as well be erased from the United States Code. On plaintiffs' understanding, the statute would apply only to inexplicable removals. Yet plaintiffs do not offer, and we cannot imagine, any reason why Congress would foreclose judicial review of high-handed decisions by petty bureaucrats at the border, while allowing judicial review as long as the orders have reasoned support. That would be perverse.

There is a different way to see this. The APA allows judicial review only of "final" administrative action. 5 U.S.C. §704. In what sense were the administrative determinations about plaintiffs' "optional practical training" programs "final"? Those decisions did not themselves revoke plaintiffs' visas. The determinations were inputs into the revocations, which occurred at the airports, but the APA distinguishes interim from final decisions. Section 704 tells us: "A preliminary,

procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."

"[T]wo conditions … generally must be satisfied for agency action to be 'final' under the APA." *Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016). The challenged action must represent the "consummation" of an agency's decisionmaking process and must determine "rights or obligations". *Ibid*. (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). In other words, §704 asks whether a "terminal event" has occurred. *Salinas v. Railroad Retirement Board*, 592 U.S. 188, 194–95 (2021). The administrative findings about plaintiffs' "optional practical training" were not the terminal events in their situations.

Consider: Could an alien obtain review under the APA of an order denying a request for asylum? Denial of asylum is a step along the way to removal but not itself a final order. Review of a final order of removal lies exclusively in the court of appeals. An alien cannot use the APA to transfer review of an asylum determination to a district court, separating that issue from review of the order of removal. See *Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018). Just so with the operation of §1252(a)(2)(A)(i). Neither the court of appeals nor a district court can review an expedited order of removal (unless an exception in §1252(e) applies), and therefore neither court can review an administrative finding that underlies the order, given the proviso in 5 U.S.C. §701(a)(1) that the APA does not authorize judicial review that some other statute forecloses.

This is all we need to say to resolve this appeal, but we add words of caution. In addition to relying on §1252(a)(2)(A)(i) the Department of Homeland Security invoked a doctrine

often called consular nonreviewability: judges do not review decisions not to issue visas or to revoke visas previously issued—more precisely, do not look behind the reasons given for denying or rescinding visas. See *Department of State v. Muñoz*, 602 U.S. 899 (2024). The district court deemed this doctrine irrelevant because the federal agents who revoked plaintiffs' visas work in the United States for the Department of Homeland Security rather than abroad for the Department of State. 2025 U.S. Dist. LEXIS 18685 at *10–13. Yet "consular nonreviewability" acquired its name when *only* the Department of State handled visas, and perhaps the old name should not determine when (if ever) judges review visa matters today. *Muñoz* describes the doctrine as one under which "the action of an executive officer to admit or exclude an alien" is not substantively reviewable. 602 U.S. at 908. We applied the doctrine to a decision by a non-consular officer in *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017). How far the doctrine extends to visa revocations at a port of entry need not be resolved today; we flag this subject only to ensure that no one thinks that the doctrine has been confined inadvertently to decisions by the Department of State at consulates outside our borders.

AFFIRMED